## UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| DANA BASS, individually and on behalf of others similarly situated,<br><br>    Plaintiffs-Petitioners,<br><br>            v.<br><br>IMPERIAL FIRE & CASUALTY INSURANCE COMPANY,<br><br>    Defendants-Respondents. | CIVIL ACTION NO.<br><br>CLASS ACTION<br><br>JURY DEMAND |

### PETITION FOR DAMAGES, PENALTIES, ATTORNEY FEES, AND EXPENSES
### Class Action Requested
### Jury Demand

The Petition of Dana Bass, an individual of full age of majority who is a resident of the Parish of Rapides and a citizen of the State of Louisiana, individually and on behalf of all others similarly situated, hereinafter referred to as Plaintiff or Ms. Bass, brings this suit as a class actual pursuant to Fed. R. Civ. P. 23(a) and (b)(3), against Defendant Imperial Fire & Casualty Insurance Company ("Defendant" or "Imperial"), respectfully representing as follows:

1.      Defendant, Imperial Fire & Casualty Insurance Company, is a North Carolina corporation with its principal place of business in Raleigh, North Carolina, and may be served through its registered agent for service of process at 2626 Glenwood Ave Ate 500, Raleigh, NC 27608.

2.      Defendant is liable to Plaintiff and all others similarly situated for all elements of damages allowed by Louisiana law, whether past, present, and/or future damages, in an amount that is just and reasonable in the premises.

## JURISDICTION

3.      This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1332, because (a) Plaintiff is a member of the putative class, which consists of at least 100 members, and Plaintiff and Defendant are citizens of different states; (b) the amount-in-controversy exceeds $5 million dollars; and (c) none of the exceptions under § 1332 apply to this claim.

4.      At all relevant times, Plaintiff and putative class members were Louisiana policyholders and residents, and Defendant is a foreign corporation licensed to do business and transact in insurance in Louisiana.

## VENUE

5.      Venue is proper in this court because a substantial portion of the acts and course of conduct giving rise to the claims alleged occurred within the district and Defendant is subject to personal jurisdiction in this district. Plaintiff is a citizen of the State of Louisiana, residing and domiciled in the Parish of Rapides.

## NATURE OF THE CASE

6.      Defendant is an automobile insurer in Louisiana and provides, *inter alia*, coverage for first-party property damage under collision and/or comprehensive coverage. Such policies, issued to Plaintiff and all putative Class Members, are form policies that promise to pay for loss up to a limit on liability of actual cash value ("ACV").

7.      In Louisiana, when an insurer elects to adjust and settle a claim based on ACV, and the insurer elects a "cash settlement," the settlement must be based on the "actual cost to purchase a comparable motor vehicle." LSA-R.S. 22:1892B(5).

8.      Most car accidents are "partial" losses, which is the term used where insurers (including Defendant) pay to repair the damage to a vehicle. Where repair of the vehicle is

impossible or uneconomical, however, the loss is considered a "total loss." When Defendant determines that a vehicle is a total loss, it elects to pay the vehicle's ACV.

9. Total loss scenarios are taxing. Not only has the insured likely suffered more than a minor accident – and thus are often dealing with potential medical injuries – but there are numerous insurance-related issues, such as payment for storage, investigation of the vehicle and claim, finding a replacement vehicle, and so forth.

10. Louisiana law, in an attempt to minimize the uncertainty surrounding total-loss situations, prescribes certain regulatory requirements that all insurers must follow when reimbursing insureds after their vehicle is determined a total loss.

11. Specifically, LSA-R.S. 22:1892B(5) governs the adjustment and claim payment for total-loss vehicles, *i.e.*, where insurers decline to repair a vehicle and choose to instead base its payment on the vehicle's actual cash value. The statute requires insurers to use one of three methods to determine "the actual cost to purchase a comparable vehicle." *Id*.

12. The options are: (1) A fair market value survey using qualified retail automobile dealers in the local market; (2) the "retail cost as determined from a generally recognized used motor vehicle industry source…"; or (3) an expert appraiser selected and agreed to by both the insurance company and the insured. LSA-R.S. 22:1892B(5)(a)-(c).

13. Unsurprisingly, given that Louisiana requires payment of the ***actual*** cost to purchase a comparable vehicle, at least two of the methods permitted – the fair market survey method and the industry source method – require use of the ***retail*** cost of the vehicle.

14. Vehicles sold at retail cost–i.e., vehicles sold through qualified retail automobile dealers–are sold at higher price points than those sold through private listings. As explained by Kelly Blue Book: "cars sold at "dealerships must meet basic safety standards to make the unit

ready to sell such as working brakes, lights, etc. These standards are not, however, factored into private party used car prices, therefore the values for private party are usually lower than retail. Additionally, there are no standards placed on private party cars and they do not face the legal liabilities that dealers experience." Kelly Blue Book, *The Car Buying Market Today*, https://www.kbb.com/car-advice/what-are-kelley-blue-book-values/ (last visited Jan. 26, 2022).

15. To prevent insurers from undervaluing totalled vehicles, the Louisiana legislature specifically requires insurers to determine the actual cost to purchase a vehicle at ***retail*** cost. LSA-R.S. 22:1892B. This requirement prevents insurers from artificially devaluing totaled vehicles by using unreliable Craigslist postings from private sellers, or suspicious price listings from "buy-here-pay-here" type car sellers. Instead, Louisiana requires use of "qualified retail" car dealers and "recognized used motor vehicle industry sources" to determine the "retail cost" of comparable vehicles.

16. Defendant fails entirely to abide by such requirements, and, in so doing, breaches its contract with its insureds in bad faith and violates numerous Louisiana regulatory requirements.

17. Defendant purports to calculate the ACV of total-loss vehicles via a third-party vendor, Kelly Blue Book Co., Inc., through a system called Kelly Blue Book Quick Values ("KBB"). Through the KBB system, Defendant artificially, capriciously, and intentionally undervalues or devalues total-loss vehicles in order to pay less than the ACV amount required by its policy and Louisiana law.

18. Ostensibly, the KBB system identifies the list price of comparable vehicles, which it then adjusts based on factors such as differences in equipment, packages, and/or condition between the comparable vehicle and the total-loss vehicle.

19. However, in violation of Louisiana law, to determine the value of the totaled vehicle, KBB relies on surveying vehicles listed by private parties instead of using qualified retail automobile dealers in the local market and only identifies to the insured a few of the comparable vehicles identified. In so doing, Defendant fails to compensate insureds for their loss and fails to pay the minimum amount required by its policy and Louisiana law.

20. Defendant only surveys vehicles listed by private parties and does not use "qualified retail" car dealers to determine the "retail cost" of comparable vehicles

## PLAINTIFF'S ACCIDENT AND VALUATION

21. At all times relevant, Plaintiff was insured under a policy of insurance issued by Defendant for a 2013 Dodge Avenger SE Sedan 4D. *See* Exh. A (Policy).

22. On or about January 8, 2021, Plaintiff's vehicle sustained damage. After Plaintiff submitted a physical damage claim, Defendant declined to pay to repair the vehicle and elected to determine it was a total-loss.

23. Defendant, through the KBB system, purportedly determined that the vehicle had a valuation range of $2,651.00 to $5,103.00, based on private-party vehicle listings. *See* Exh. B (Market Valuation Report) at 1.

24. Defendant then determined the actual cash value of the vehicle to be $3,411.00 and then subtracted the $500.00 deductible for a total of $2,911.00. *See* Exh. C (Settlement Summary) at 1.

25. Defendant did not include any amounts for sales tax, or any title and/or registration fees.

26. Plaintiff is a victim to Defendant's general scheme of using an arbitrary and capricious selection of private-party vehicle listings.

## **DEFENDANT DOES NOT ABIDE BY LSA-R.S. 22:1892B(5)(a)**

27. LSA-R.S. 22:1892B(5)(a) requires the use of a "fair market value survey conducted using *qualified retail automobile dealers* in the local market area as resources." *Id.* (emphasis added).

28. The KBB system used by Defendant does not comply. Instead, the system utilizes vehicle data from private parties, the details of which Defendant obscures from its insureds.

29. In Plaintiff's case, for example, Defendant utilized four "comparable" vehicles listed only from private parties and did not provide any vehicles from "qualified retail automobile dealers."

30. Thus, Defendant does not abide by LSA-R.S. 22:1892B(5)(a) in adjusting Plaintiff's total-loss claim.

## **DEFENDANT DOES NOT ABIDE BY LSA-R.S. 22:1892B(5)(b)**

31. LSA-R.S. 22:1892B(5)(b) requires Defendant to determine the "retail cost as determined from a generally recognized used motor vehicle industry source; such as, an electronic database, if the valuation documents generated by the database are provided to the first-party claimant, or a guidebook that is available to the general public."

32. Defendant does not comply with LSA-R.S. 22:1892B(5)(b) because it does not determine the "retail cost" of total-loss vehicles. While the KBB system used by Defendant may be "generally recognized used motor vehicle industry source" within the meaning of § 22:1892B(5)(b),[1] the system violates the "retail cost" requirement because it relies solely on vehicles sold by private-parties and not vehicles sold by retailers in the motor vehicle industry.

---

[1] Further investigation is needed to determine whether the KBB system utilized by Defendant is a "generally recognized used motor vehicle industry source."

33.     Defendant also fails to provide its insureds any valuation documents generated by the KBB system to its insureds, as required by LSA-R.S. 22:1892B(5)(b).

34.     Thus, Defendant does not abide by LSA-R.S. 22:1892B(5)(b) in adjusting Plaintiff's total-loss claim

## DEFENDANT DOES NOT ABIDE BY LSA-R.S. 22:1892B(5)(c)

35.     LSA-R.S. 22:1892B(5)(c) requires Defendant to determine the "Actual cost to purchase" by using "[a] qualified expert appraiser selected and agreed upon by the insured and insurer. The appraiser shall produce a written nonbinding appraisal establishing the actual cash value of the vehicle's preloss condition."

36.     Defendant did not use a "qualified expert appraiser" to determine the "actual cost to purchase," and Plaintiff did not agree to the use of any qualified appraiser. Accordingly, Defendant did not abide by LSA-R.S. 22:1892B(5)(c).

## DEFENDANT DOES NOT PAY THE "ACTUAL COST TO PURCHASE" A VEHICLE BECAUSE IT FAILS TO PAY THE COSTS OF SALES TAX AND TAG, TITLE, AND REGISTRATION FEES

37.     Pursuant to LSA-R.S. 22:1892B, when an insurer elects to settle a claim through a cash payment based on ACV, the insurer is obligated to make a "cash settlement based on the actual cost to purchase a comparable motor vehicle."

38.     The "cost to purchase a comparable motor vehicle" includes sales tax and regulatory fees required to purchase a "comparable motor vehicle."

39.     Throughout the class period, Louisiana levied a sales and use tax on the sale or lease of any automobile sold or leased throughout the State of Louisiana. La. R.S. §§ 47:301-37:318.

40. Throughout the class period, Louisiana prohibited the purchase, transfer, or lease of a vehicle without the transfer of title, and the payment of a minimum $8.00 title transfer handling fee. La. R.S. § 32:412.1 (A)(3)(b):

   a. Except as provided for in Subsection E of this Section, the office of motor vehicles shall collect, in addition to any fee authorized by law, a handling charge of eight dollars for each of the following transactions:
      …
      (3) Vehicle titling and registration:
      …
      (b) Transfer of ownership.

41. Throughout the class period, Louisiana prohibited the purchase, transfer, or lease of a private passenger vehicle without proper registration, and the payment of a minimum $3.00 license plate transfer fee. La. R.S. § 47:509 (B)(3) ("To effect such transfer and registration the owner of the vehicle shall pay a total registration transfer fee of three dollars. Such fee shall cover only the transfer of said registration.").

42. Throughout the class period, Louisiana does not recognize the transfer or ownerships of a motor vehicle without payment of the $68.50 title fee, La. R.S. § 32:728 (a vehicle will not be legally transferred until the new owner makes proper application for title).

43. Together, sales tax, a title fee, a title transfer handling fee, and a license plate transfer fee ("ACV Taxes and Fees") are all included in the "cost to buy a comparable vehicle" and, thus, should be included in the cash settlement paid by an insurer after a total loss. LSA-R.S. 22:1892B.

44. Nonetheless, Defendant failed to include any amount for ACV Taxes and Fees in its cash settlements paid to insureds after a total loss during the class period.

## DEFENDANT'S CONDUCT BREACHES ITS CONTRACTS AND VIOLATES LOUISIANA LAW

45. Defendant is aware that the relying on private listings results in unlawfully low vehicle valuations and that, were Defendant to use a method prescribed by Louisiana law, the amounts paid to total-loss insureds would be significantly higher.

46. Because retail motor vehicle industry players and sources are aware of and accurately reflect the used vehicle market – which are then used by others in the industry, including car dealers, and relied upon by consumers – it is virtually impossible for a system designed to provide an artificially *lower* amount to indemnify insureds for their loss.

47. Defendant is aware that retail vehicle industry sources provide higher – and more accurate – vehicle values than the private-party listings employed by Defendant.

48. The arbitrary and capricious vehicle values provided by KBB is lower than "the actual cost to purchase" a vehicle of like kind and quality, and concomitantly lower than the vehicle's fair market retail cost. Moreover, it is lower than the vehicle's ACV, as reasonably understood under the Policy and as conformed to Louisiana law.

49. As an example, a valuation report provided by the National Automobile Dealers Association ("NADA")--a "generally recognized used motor vehicle industry source–describes Plaintiff's insured vehicle as having a "Clean Retail" value of $4,845 (adjusted for mileage and options before applying tax and deductible), so that the total paid to Plaintiff using a lawful valuation method would have been higher than that provided by Defendant.

50. Defendant's failure to properly pay the actual cash value of an insured's loss constitutes a breach of contract. Defendant's use of a system that intentionally devalues total-loss vehicles constitutes a breach of contract.

51. Defendant breaches its contracts with insureds by refusing to utilize a legitimate method prescribed by LSA-R.S. 22:1892B(5), thereby refusing to pay the recognized "actual cost to purchase" or market retail cost as required by Louisiana law and its own Policy.

52. Moreover, the aforementioned conduct – and breaches of contract – are the result of actions that constitute bad faith, and are capricious and arbitrary in violation of Defendant's duties and obligations to its insureds.

53. As set forth above, Defendant violates LSA-R.S. 22:1892 because it does not use a survey of qualified retail automobile dealers in the market area or the closest nearest market area – KBB utilizes data from private parties and its algorithms are not merely illegitimate and arbitrary, but are based on incorrect data. And even if Defendant did, its system is designed not to pay the "actual cost to purchase" or market retail cost for the total-loss vehicle.

54. Defendant's conduct set forth herein and use of the KBB system constitutes violations of La. R.S. § 22:1973A in that Defendant violates its "duty of good faith and fair dealing" by failing to "adjust claims fairly and promptly and to make a reasonable effort to settle claims" with its insureds.

55. Upon information and belief, Defendant intentionally undervalues the total-loss claims, about which it knowingly and intentionally misinforms and misleads insureds concerning the KBB system, including the selection of "comparable" vehicles and utilizations of adjustments, and otherwise violates its duty of good faith and fair dealing and Louisiana law.

56. Defendant's conduct set forth herein and use of the KBB system constitutes violations of La. R.S. § 22: 1973B(5) in that Defendant fails "to pay the amount of any claim due any person insured by the contract within sixty days after receipt of satisfactory proof of loss" and such failure is "arbitrary, capricious, or without probable cause."

57. Not only does Defendant employ an improper method for determining the value of the total-loss vehicle, but Defendant also underpays its insureds after a total loss by failing to include mandatory ACV Taxes and Fees in its cash ACV payments.

58. Defendant's Policy, to the extent inconsistent, is conformed to comply with Louisiana law.

## CLASS ACTION ALLEGATIONS

59. Pursuant to Fed. R. Civ. P. 23(a) and (b)(3), Plaintiff seeks to certify and represent the following Class:

> All Louisiana Imperial Fire & Casualty Insurance Company insureds who had a property damage claim determined to be and adjusted as a covered total-loss, where such claim(s) had a date of loss from the time period of ten years prior to the filing of this suit through the date of an Order certifying the Class.

60. Excluded from the Class are Defendant and its agents, employees, subsidiaries, parents, and related entities, as well as the Judge assigned to this case and his staff employees. Also excluded from the Class are the undersigned counsel and anyone employed in their law firms.

61. **Numerosity:** Although unable to allege a precise number of Class Members absent confirmatory discovery, upon information and belief, including investigation by the undersigned and examination of the premiums written by Defendant over the past ten years, Plaintiff believes that the number of members of the Class numbers in the thousands and perhaps tens of thousands, such that members of the Class are so numerous that joinder of all individual claims at issue is impracticable. Thus, the Class is sufficiently numerous within the meaning of Rule 23(a)(1).

62. **Commonality:** This litigation raises common questions of law and fact subject to common resolution within the meaning of Rule 23(a)(2), including:

    a. Whether Defendant's KBB valuation system is a complies with LSA-R.S. 22:1892B(5)(a);

    b. Whether Defendant's KBB valuation system is a complies with LSA-R.S. 22:1892B(5)(b);

    c. Whether Defendant's use of the KBB valuation system constitutes breach of contract and/or bad faith.

    d. Whether Defendant's uniform method of relying on private-party vehicle listings and applying arbitrary adjustments violates Defendant's covenant of good faith and fair dealing, is exercised in bad faith, and/or constitutes a breach of contract; and

    e. Whether such practice violates LSA-R.S. 22:1793 and/or LSA-R.S. 22:1892.

63. **Typicality:** Plaintiff's claims and the defenses thereto are typical of members of the Class within the meaning of Rule 23(a)(3). Defendant injured Plaintiff and members of the Class through uniform misconduct and Plaintiff's legal claims arise from the same core practices. Plaintiff suffered the same harm as all Class Members and Plaintiff's interests are identical to those of the other Class Members.

64. **Adequacy:** Plaintiff will adequately – and zealously – protect the interests of members of the Class. Plaintiff is unaware of any interest in conflict with those of the Class, and Plaintiff and the undersigned have sufficient and adequate resources to prosecute this claim. Plaintiff is sufficiently knowledgeable concerning the subject matter at issue and is committed to protecting putative class members from any unfair or harmful conduct. Moreover, Plaintiff has retained the undersigned as counsel, who, collectively, have successfully litigated hundreds of class actions, many of which in the insurance context, through settlement and litigated judgments. Included in the undersigned are Louisiana counsel who not only have significant experience in

class litigation, but are well-versed in the idiosyncrasies and particularities of Louisiana law and local rules and procedures. As such, the adequacy requirement of Rule 23(a)(4) is satisfied.

65. **Predominance:** The aforementioned common issues of law and fact predominate over any individual issues within the meaning of Rule 23(b)(3). Issues of liability are common to the class, and, as such, even if issues of damages are individualized, that would not preclude class treatment. Moreover, while the *amount* of damages will vary, the *measure* of damages will not:

   a. Either of Plaintiff's theory of damages results in a uniform measure, *i.e.*, (1) the difference between the valuation amount asserted by Defendant through the KBB system and the value determined by a source using qualified retail automobile dealers in the local market; or (2) the amount of "adjustments" designed merely to reduce the retail cost to an amount less than retail cost.

66. **Superiority:** Class treatment is superior to any other viable alternative method of adjudication within the meaning of Rule 23(b)(3), in that:

   a. Neither the size of the Class, nor any other factor, make it likely that difficulties will be encountered in the management of this Class as a class action;

   b. The prosecution of separate actions by individual Class Members, or the individual joinders of all Class Members in this action, is impracticable and would create a significant and unnecessary burden on the resources of the courts and could result in inconsistent adjudication, while a single class action can determine, with judicial economy, the rights of each member of the Class;

   c. Because of the disparity of resources available to Defendant versus those available to individual members of the Class, prosecution of separate actions would work a financial hardship;

    d. The conduct of this action as a class action conserves the resources of the parties and the court system and protects the rights of each Class Member and meets all due process requirements. A class action is also superior to the maintenance of these claims on an individual basis when all actions arise out of the same circumstances and course of conduct; and

    e. Because the claims are relatively small compared to the cost, time, and expense of litigation, individual actions will be rendered financially impractical, if not impossible.

67. Class members can be identified and ascertained through objective criteria within Defendant's own possession.

## COUNT I: BREACH OF CONTRACT
**(on behalf of the Class)**

68. Paragraphs 1-58 are hereby incorporated by reference.

69. This Count is brought by Plaintiff individually and on behalf of the Class.

70. Plaintiff and all members of the putative Class paid all premiums and otherwise satisfied all conditions precedent, as evidenced by, *inter alia*, the fact that Defendant determined the claims were covered claims.

71. Given the duties and obligations imposed by the terms and conditions of the form insurance contract, interpreted in light of and (if necessary) conformed to Louisiana law, Defendant's use of the KBB valuation system constituted a breach of contract.

72. Moreover, the conduct set forth herein was knowingly capricious and illegitimate, and otherwise constitutes bad faith.

73. Plaintiff and putative members of the Class were damaged by Defendant's breaches of contract in amounts that will be demonstrated according to proof.

74. Plaintiff and putative members of the Class are entitled to compensatory damages, penalties, costs, attorneys' fees, and all other relief allowable by law and/or that this Court deems just and proper.

### COUNT II: VIOLATIONS OF LSA-R.S. 22:1793
**(on behalf of the Plaintiff and the putative Class)**

75. Paragraphs 1-58 are hereby incorporated by reference.

76. This Count is brought by Plaintiff individually and on behalf of the Class.

77. As set forth herein, Defendant knowingly and/or intentionally undervalued total-loss vehicle property damage claims. Defendant did so notwithstanding its knowledge that use of legitimate used motor vehicle sources and vehicle sellers would have resulted in an accurate and fair valuation for its insureds.

78. The conduct set forth herein violated Defendant's duties of good faith and the requirements prescribed by Louisiana law.

79. Defendant's utilization of the KBB valuation system violated LSA-R.S. 22:1892.

80. As to Plaintiff and members of the putative Class, Defendant failed to fairly and promptly adjust claims and failed to make a reasonable efforts to settle claims with its insureds, which constitutes a violation of its good faith duties.

81. Similarly, Defendant failed to pay the amount of claims due its insureds within the statutorily-prescribed time of sixty days. Moreover, such failure, as outlined herein, was "arbitrary, capricious, or without probable cause."

82. As such, Plaintiff and members of the Class are entitled to all damages, penalties, attorney fees, costs, and relief permitted by law and deemed by this Court to be just and proper.

## COUNT III: PENALTIES AND EXPENSES OF LITIGATION
### (on behalf of Class pursuant to La. R.S. §22:1892)

83.    Paragraphs 1-58 are hereby incorporated by reference.

84.    This Count is brought by Plaintiff individually and on behalf of the Class.

85.    Defendant has acted in bad faith, been stubbornly litigious, and caused Plaintiff and Class Members unnecessary trouble and expense by failing to comply with the clear requirements of its policies and Louisiana law.

86.    Plaintiff and Class Members are entitled to, and expressly pray for, expenses of litigation, all allowable penalties, and all attorneys' fees and costs pursuant to La. R.S. §22:1892(B)(1), including 50% of damages found or $1,000.00.

### Jury Demand

Plaintiff, individually and on behalf of the putative Class, respectfully requests a trial by jury on all issues triable by jury.

### PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff, individually, and on behalf of the Class that includes all other persons similarly situated, prays that Imperial Fire & Casualty Insurance Company be duly cited and served with this Complaint, be required to appear and answer the same, and after due proceedings had, that there by judgment rendered herein in favor of Plaintiff and the Class, and against Defendant as follows:

a) For an order certifying this action as a class action on behalf of the Class, with Plaintiff serving as representative of the Class and with the undersigned serving as Counsel for the Class;

b) For notice to be sent to the Class in a form and manner approved by the Court and comporting with due process;

c) For an award of compensatory damages in amounts owed pursuant to the policies of insurance and Louisiana law;

d) For all penalties, expenses, and relief allowable by law;

e) For all other damages according to proof;

f) For an award of attorneys' fees and expenses pursuant to La. R.S. §22:1892(B)(1) and/or La. R.S. §22:1973 or other applicable law;

g) For costs of suit incurred herein;

h) For pre-judgment and post-judgment interests on any amounts awarded; and

i) For such other general and/or equitable relief to which the Plaintiff and/or the Class may be entitled that this Court deems just and proper.

This 24th day of February, 2022.

        Respectfully submitted,

*/s/ Stephen J. Herman* _____
**Stephen J. Herman**, La. Bar No. 23129
**Soren E. Gisleson**, La. Bar No. 26302
**John S. Creevy**, La. Bar No. 30879
**Charles M. King**, La. Bar No. 34621
**HERMAN HERMAN & KATZ, LLC**
820 O'Keefe Avenue
New Orleans, Louisiana 70113
Telephone: (504) 581-4892
Fax No. (504) 561-6024
E-Mail: sherman@hhklawfirm.com
E-Mail: sgisleson@hhklawfirm.com
E-Mail: jcreevy@hhklawfirm.com
E-Mail: cking@hhklawfirm.com

**AMY L. JUDKINS** *(pro hac vice pending)*
Florida Bar No. 125046
**EDMUND A. NORMAND** *(pro hac vice pending)*
Florida Bar No. 865590
**JACOB L. PHILLIPS** *(pro hac vice pending)*
Florida Bar No. 120130

**NORMAND PLLC**
3165 McCrory Place, Ste. 175
Orlando, Florida 32803
Telephone: (407) 603-6031
E-Mail: amy.judkins@normandpllc.com
E-Mail: jacob.phillips@normandpllc.com
E-Mail: ed@normandpllc.com
E-Mail: ean@normandpllc.com

*Attorneys for Plaintiff & Proposed Class*