UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| DANA BASS, | ) CASE NO: 1:22-cv-00550 |
| Plaintiff, | ) |
| vs. | ) |
| IMPERIAL FIRE AND CASUALTY INSURANCE COMPANY, | ) |
| Defendant. | ) |

**JOINT RENEWED MOTION FOR**
**FINAL APPROVAL OF CLASS ACTION SETTLEMENT**

Plaintiff Dana Bass ("Plaintiff"), individually and on behalf of the Settlement Class, and Defendant, Imperial Fire and Casualty Insurance Company ("Imperial"), pursuant to the direction of this Court, hereby jointly file this Joint Renewed Motion for Final Approval of Class Action Settlement and Certification of Settlement Class (the "Renewed Motion").

**INTRODUCTION**

The Parties report that, after completing the additional notice to Class Members required by this Court's December 10, 2024, Order,[1] the Claim Administrator has approved 877 of the 916 filed claims. The total amount to be paid to Class members for the approved claims is $579,523.90. *See* **Exhibit 1**, Supplemental Declaration of Edmund Normand (Normand Supp. Decl.") ¶ 6. The

---

[1] This Motion and accompanying Memo are submitted in accordance with the Court's December 10, 2024 Order Denying Plaintiff's Unopposed Motion for Final Approval of Class Action Settlement and Approval of Attorneys' Fees, Costs and Service Award (the "Order"). *See* ECF No. 52. Therein the Court ordered another round of notice by U.S. mail to all class members, with the extended claims period running until January 17, 2025, after which the Defendant was granted 75 days to evaluate any claims filed. *Id.* Pursuant to the Order, the Parties were thereafter permitted to renew the instant Joint Motion. *Id.*

average value per paid claim is $997.46, with many claimants receiving over $10,000.00 for their individual claim. *Id.* ¶ 9. This value is before consideration of the value of the future benefits (conservatively estimated at $1,943,052.08 in future benefits over the next two years (which is the agreed expanded limitations period). *Id.* ¶¶ 10–12. Further, Defendant has agreed to separately pay attorney's fees, litigation costs, notice and administrative costs, and service award—all additional benefits to the Class that increase the value of the common fund under Fifth Circuit law. *See* Agreement ¶ 82. Based on the foregoing, the estimated total benefits to the Class which will be directly paid by Imperial is **$3,384,888.87**. Normand Supp. Decl. ¶¶ 11–12.

The litigation events and facts supporting final approval of the settlement are summarized in the initial Motion for Final Approval of Settlement ("Final Approval Motion"), ECF No. 46, and the Motion for Approval of Attorneys' Fees, Costs and Service Award ("Fee Motion"), ECF No. 42. (together, the "Motions"). At the December 10, 2024, hearing on the Motions (the "Approval Hearing"), this Court indicated it was inclined to approve the settlement but wanted additional class notice sent out prior to final approval. This Court deferred ruling on the Final Approval and Fee Motion until after the additional notice and calculation of final claimed damages, including an estimate of the value of claims since the settlement date and the value of injunctive relief and additional claims after the additional notice. (ECF No. 52) At the "Approval Hearing" the Court also indicated it wanted additional briefing regarding the amount of fees sought by Plaintiff's counsel. As to attorneys' fees, the Court requested additional briefing concerning the agreed fee in the Settlement Agreement after calculating the value of approved claims and the estimated value of future relief. *Id.*, Accordingly, as the Court has already indicated it is inclined to substantively approve the Settlement, which the Parties jointly request it to do, this memorandum focuses on the reasons supporting final approval of the full amount of fees and costs

2

Imperial has agreed to pay. Imperial agrees with the facts set forth in support of Plaintiff's fee request and does not oppose the award of the entire amount requested.

With Plaintiff's costs totaling $10,561.56, Plaintiff requests $784,438.44 in attorney fees. Normand Supp. Decl. ¶¶ 11–12. This amount is reasonable whether analyzed as a percentage of the common fund or through the lodestar method. Because the common fund is valued at **$3,384,888.87**, the fee award represents just 23.17% of the common fund—a percentage well within the range of reasonableness in a case like this. Moreover, because Plaintiff's Counsel has incurred $513,506.5 in lodestar, the full requested amount of fees only requires a modest upward multiplier of only 1.53 (Defendant paid attorney's fees ($784,438.44) divided by lodestar of $513,506.50. As discussed below, this multiplier is fully supported by all the relevant *Johnson* factors. Accordingly, the Parties jointly respectfully request the Court enter an order granting final approval to the Settlement, and Plaintiff respectfully requests the Court enter an order awarding Plaintiff's Counsel $10,561.56 in litigation costs and $784,438.44 in attorney fees and a service award of $5,000 to the Class Representative.

## ARGUMENT

### I. LEGAL STANDARD

Rule 23(h) authorizes a district court to "award reasonable attorney's fees and nontaxable costs that are authorized by law or by the parties' agreement." Fed. R. Civ. P. 23(h). Courts, including in the Fifth Circuit, "have encouraged litigants to resolve fee issues by agreement, if possible." *DeHoyos v. Allstate Corp.*, 240 F.R.D. 268, 322 (W.D. Tex. 2007) (citing cases, including *Johnson v. Ga. Highway Express, Inc.*, 488 F.2d 714, 720 (5th Cir. 1974)). In common-fund cases like this—in which class counsel is compensated from the general fund used to pay class members' damages and claims—district courts generally award attorneys' fees using one of

two methods: "(1) the percentage method, in which the court awards fees as a reasonable percentage of the common fund; or (2) the lodestar method, in which the court computes fees by multiplying the number of hours reasonably expended on the litigation by a reasonable hourly rate and, in its discretion, applying an upward or downward multiplier." *In re Heartland Payment Sys., Inc. Customer Data Sec. Breach Litig.*, 851 F. Supp. 2d 1040, 1071 (S.D. Tex. 2012).

Based on Fifth Circuit law, however, "numerous district courts in this Circuit have applied a 'blended' percentage method to determine a reasonable fee award, while staying within the *Johnson* framework." *In re Vioxx Prods. Liab. Litig.*, 760 F. Supp. 2d 640 (E.D. La. 2010) (citing cases). This "blended percentage approach is an appropriate method for calculating reasonable common benefit attorneys' fees in this case." *Id.* The Court must "first determine whether the benchmark should be adjusted based on the application of the *Johnson* facts to the particular circumstances of this case." *Id.* Then, the Court should "conduct a rough lodestar analysis to cross-check the reasonableness of the percentage fee award. The lodestar analysis is not undertaken to calculate a specific fee, but only to provide a broad cross check on the reasonableness of the fee arrived at by the percentage method." *Id.*

## II. CLASS COUNSEL'S FEE AND LITIGATION COST REQUEST IS REASONABLE, SOLELY PAID FOR BY DEFENDANT, AND SHOULD BE GRANTED.

### A. The Attorney's Fee Award, Which Represents 23.17% of the Actual Cash Benefits to Class Members, Is Below the Benchmark and Reasonable.

"This Court has substantial discretion in determining the appropriate fee percentage." *Jenkins v. Trustmark Nat. Bank*, 300 F.R.D. 291, 307 (S.D. Miss. 2014). "No general rule can be articulated on what is a reasonable percentage of a common fund." *Bethea v. Sprint Commc'ns*, 2013 WL 228094, *3 (S.D. Miss. Jan. 18, 2013) (quoting *Smith v. Tower Loan of Miss., Inc.*, 216 F.R.D. 338, 369 (S.D. Miss. 2003)). "Nonetheless, awards commonly fall between a lower end of

4

20% and an upper end of 50%." *Jenkins*, 300 F.R.D. at 307 (citing *Smith*, 216 F.R.D. at 368). Further, "it is not unusual for district courts in the Fifth Circuit to award percentages of approximately one third." *Collins v. Sanderson Farms, Inc.*, 568 F. Supp. 2d 714 729 (E.D. La. 2008).

Because Defendant agreed to separately pay litigation costs, and costs are $10,561.56, Plaintiff seeks attorney's fees in the amount of $784,438.44. Normand Supp. Decl. ¶¶ 3. As explained further below, this represents only 23.17% (Normand Supp. Decl. ¶ 13) of the value of the common fund—which is below the benchmark in this Circuit. *See In re Heartland Payment Syss., Inc. Customer Data Sec. Breach Litig.*, 851 F. Supp. 2d 1040, 1081 (S.D. Tex. 2012) (explaining typical benchmark is approximately 25%).

To determine the value of the settlement, many federal courts base fee awards "on the benefits actually delivered." *In re Heartland Payment Syss., Inc. Customer Data Sec. Breach Litig.*, 851 F. Supp. 2d 1040, 1075 (S.D. Tax. 2012) (citing Manual for Complex Litig. (Fourth) § 21.71 (2004). In calculating this number, courts may properly consider (1) "the amount paid directly to class members who submitted valid claims", (2) the "cost of notice" (because "[w]hen a (b)(3) action is certified for trial rather than settlement, the plaintiffs normally bear the notice costs"), (3) "the approximate cost of administering the claims process", and (4) "the maximum amount of attorneys' fees and costs [defendant] agreed to pay."[2] *Id.* As various courts have explained, this is because when something that would otherwise be borne by the class—such as attorneys' fees, litigation costs, notice costs—are borne instead by defendants, the fact that those

---

[2] Attorney's fees and costs are properly considered when paid separately because "[t]he award to the class and the agreement on attorney fees [and costs] represent a package deal. Even if the fees are paid directly to the attorneys, those fees are still best viewed as an aspect of the class' recovery." *In re Heartland*, 851 F. Supp. 2d at 1078 (quoting *Johnston v. Comerica Mortg. Corp.*, 83 F.3d 241, 246 (8th Cir. 1996)).

5

costs are not subtracted from the dollar amounts paid to class members is a specific benefit to those class members. *See, e.g.*, *Gascho v. Global Fitness Holdings, LLC*, 822 F.3d 269, 282 (6th Cir. 2016) (explaining that when conducting a percentage of the fund analysis, "attorney's fees are the numerator and the denominator is the dollar amount of the Total Benefit to the class, which includes the benefit to class members, the attorney's fees and may include costs of administration") (cleaned up).

For this reason, courts often consider the future benefits to the class when, as here, they will come in the form of anticipated future cash payments. *See, e.g.*, *Staton v. Boeing Co.*, 327 F.3d 938, 974 (9th Cir. 2003) ("[C]ourts should consider the value of the injunctive relief obtained as a relevant circumstance in determining what percentage of the common fund class counsel should receive as attorneys' fees") (internal quotation and citation omitted); *Jenkins v. Trustmark National Bank*, 300 F.R.D. 291, 301 (S.D. Miss. 2014) (approving settlement in which, in addition to the settlement payments the defendant would make, it also agreed to a practice change, resulting in future cash benefits to its customers, for two years); *Saccoccio v. JP Morgan Chase Bank, N.A.*, 297 F.R.D. 683, 693 (S.D. Fla. 2014) (explaining courts consider injunctive or prospective relief in determining the benefit value of a settlement); *In re Diet Drugs (Phentermine, Fenfluramine, Dexfenfluramine) Prods. Liab. Litig.*, 553 F. Supp. 2d 442, 468 (E.D. Pa. 2008), *as corrected* (Apr. 9, 2008), *judgment entered*, No. CIV.A. 99-20593, 2008 WL 2890878 (E.D. Pa. July 21, 2008), *and aff'd sub nom. In re Diet Drugs*, 582 F.3d 524 (3d Cir. 2009) ("the court must look to all benefits, tangible and intangible, as a whole when calculating the value of the Settlement Agreement and the appropriate award therewith."); *Pinto v. Princess Cruise Lines*, 513 F. Supp. 2d 1334, 1342 (S.D. Fla. 2007) ("[W]hen determining the total value of a class action settlement for purposes of calculating the attorneys' fee award, courts usually consider not only the

6

compensatory relief, but also the economic value of any prospective injunctive relief obtained for the class"); *Sheppard v. Consol. Edison Co. of New York, Inc.*, 2002 WL 2003206, at *7 (E.D.N.Y. Aug. 1, 2002) (in valuing total settlement for percentage-based attorneys' fee award, court included $6.745 million in monetary relief and "an estimated $5 million in non-monetary, injunctive relief"); *Steiner v. Williams*, 2001 WL 604035, at *4 (S.D.N.Y. May 31, 2001) ("Although the settlement in this action did not involve the payment of money by the defendants, counsel may nonetheless recover a fee if the settlement conferred a substantial non-monetary benefit.").

The Court should consider the prospective benefits of the Settlement because they are not speculative and the methodology for calculating them is fixed. The Agreement provides for a change in practice that requires Defendant to pay the full taxes and fees on each total loss claim that Plaintiff alleges is owed. *See* Settlement ¶ 79. Each insured who submits a total-loss claim after the settlement date will get the full benefits of the Settlement because Plaintiff has secured such prospective relief. *Id.* This data shows that, among the five Defendant entities, there are an estimated 974 claims per year. Normand Supp. Decl. ¶¶ 10, 11. As such, the estimated future benefits to be $1,943,052.08 (974 claims per year for 2 years multiplied by $997.46 per claim). *Id.* ¶ 10. Two years is a reasonable limit on the calculation of prospective relief because this is the limitations period agreed to by Defendant in the Agreement. *Id.* ¶ 10.

The following chart summarizes the actual cash benefits the Settlement provides to Class Members, all of which will be actually paid by the Defendant, and which the Court may consider in valuing the common fund:

| # | BENEFIT TYPE | AMOUNT |
|---|---|---|
| 1 | Benefits to be Paid to Class Members in Cash (100% of Damages Owed) | $579,523.90 |
| 2 | Estimated Future Benefits for Two-Year Limitations Period | $1,943,052.08 |
| 3 | Class Notice and Administration | $62,312.89 |

| 4 | Plaintiff's Litigation Costs | $10,561.56 |
|---|---|---|
| 5 | Service Award | $5,000.00 |
| 6 | Maximum Attorney's Fees | $784,438.44 |
|   | **TOTAL CASH BENEFIT TO CLASS** | **$3,384,888.87** |

**B. Application of the *Johnson* Factors to the Benchmark Further Supports the Reasonableness of the Requested Fee Award.**

Plaintiff's initial memorandum in support of the fee award showed why each *Johnson* factor supports the requested fee. Plaintiff supplements that memorandum with additional facts providing further support for award of the full fee Defendant has agreed to pay—and again, Defendant's payment of such fees will have absolutely no impact and will not reduce *any* payments to Class members.

**1. The Requested Fee Is Supported by the Novelty and Difficulty of the Issues.**

"[T]here is no doubt that this case is both novel and difficult." *Dehoyos v. Allstate Corp.*, 240 F.R.D. 269, 327 (W.D. Tex. 2007) (citing *Garza v. Sporting Goods Props., Inc.*, No. CIV. A. SA-93-108, 1996 WL 56247, at *30 (W.D. Tex. Feb. 6, 1996) (considering novelty and difficulty of questions involved in class action litigation)). This was a highly contested lawsuit relating to a novel legal theory without precedent relating to the payment of certain Sales Tax and Transfer Fees pursuant to a statute that had not been applied to similar facts. Defendant maintains and argues it possesses numerous meritorious defenses that could have resulted in no recovery for Plaintiff and the Settlement Class.

When the Parties entered the Agreement, there was a pending Motion to Dismiss (ECF No. 9), which, if granted, would have resulted in no recovery to the class members. The Motion to Dismiss raised at least two legal defenses, both of which risked no recovery and are now resolved in favor of the Settlement Class. The Motion was fully briefed for approximately 15 months

without resolution.[3] Faced with a motion to dismiss fraught with risk of no recovery for a lengthy period without resolution, the procedural posture counseled in favor of a negotiated resolution.

In addition to seeking dismissal, Defendant argued that based on the Policy's language, the applicable statute of limitations was limited to one year, which would have, among other things, eliminated the named Plaintiff's claim, as she would have been outside the one-year prescription period. *See* ECF No. 9 at 7. Had the Court agreed, Plaintiff's claim would have been dismissed, meaning no Class Member would have recovered their damages. Further, no Louisiana appellate court has ruled on the definition of replacement costs in a motor vehicle total loss. Such litigation risks were relevant to the nature and structure of the Agreement.

There is also a risk that a litigated class would not be certified. Respectfully, Class Counsel should not be penalized, for mitigating the above-detailed risk of no recovery by Class Members—instead, Class Counsel secured an excellent settlement that provides 100% benefits to hundreds of class members who, collectively, secured hundreds of thousands of dollars by doing nothing more than signing a pre-filled, postage-prepaid claim form.

**2. The Requested Fee Is Supported by the Amount Involved and the Results Obtained.**

"The United States Supreme Court and the Fifth Circuit have held that the most critical factor in determining the reasonableness of a fee award is the degree of success obtained." *In re Enron Corp. Securities, Derivative & "ERISA" Litig.* 586 F. Supp. 2d 732, 789 (S.D. Tex. 2008) (internal quotation marks omitted) (citing *Farrar v. Hobby*, 506 U.S. 103, 114 (1992)). Multiple

---

[3] Defendant filed its Motion to Compel Appraisal and Dismiss Pending Completion on May 23, 2022. ECF No. 9. The Parties' Joint Motion to Stay Pending Mediation was filed on August 11, 2025. ECF No. 27. Plaintiff and Defendant negotiated a settlement on December 12, 2023. The Agreement was signed by all parties on May 4, 2024. ECF No. 44.

9

aspects of this Settlement demonstrate that the results achieved by Class Counsel supports the requested fee award.

> **i. The Settlement Provides for 100% of the Claimed Compensation with a Simple Claim Process and Robust Notice.**

The Settlement is an excellent result for Class Members, establishing an easy claim process, multiple rounds of robust notice, and providing 100% of the relief requested. Moreover—and critically—Defendant agreed to pay all fees and expenses. Class members received multiple notices, resulting in an impressive 99.5% delivery rate. ECF No. 44-1 ¶ 17. To submit a claim, Class Members merely had to verify the pre-filled information by clicking a link or signing a prepaid postcard. *Id.* This is an excellent result supporting the fee award, especially because if each individual class member who submitted a claim had instead filed suit, they could never have received more than the 100% damages with all fees and costs paid by Defendant as provided in this Settlement.

Class Members receive $579,523.90 in direct cash payments and are also benefitting from having notice and administration costs, litigation costs, and attorney's fees paid separately by Defendant. Normand Supp. Decl. ¶¶ 8–11. The Class Members who submitted approved claims could have received nothing had they brought individual suits or if, in this case, the motion to dismiss, still pending at the time of Settlement, had been granted. Moreover, 192 Settlement Class Members are receiving a recovery of one thousand dollars or more, with some individual awards exceeding $10,000.00. *Id*. ¶ 6.

At an average payout of nearly $1,000.00, Settlement Class Members are receiving the benefit of a settlement which would never have been economically feasible to bring individually. This is a primary public policy function of class action settlements: recovering on an aggregated basis "for cases in which a large number of individuals have suffered relatively small damages,

[where] the cost of individual litigation would be prohibitive." *Mullen v. Treasure Chest Casino, LLC*, 186 620, 624 (5th Cir. 1999). Plaintiff is unaware of any individual or class action lawsuit in Louisiana contesting the payment of fees and taxes in a total-loss first-party claim prior to this action and other Louisiana claims brought by Class Counsel, which further demonstrates the superiority of class adjudication. *See Mitchell v. State Farm Fire & Cas. Co.*, 327 F.R.D. 552, 564 (N.D. Miss. 2018), *aff'd*, 954 F.3d 700 (5th Cir. 2020).

> **ii. By Relieving the Administrative Burden on Defendant, the Settlement Structure Afforded All Class Members a Fair and Simple Way to Obtain 100% of Their Damages Without Paying Any Fees or Costs.**

The Settlement was the product of a lengthy, arms'-length mediation. *See* Decl. of Michael Ungar, ECF No. 37-3, ¶ 5. Defendant declined to settle except on a claims-made settlement structure. Calculating damages through a judgment or a common fund would have required Defendant to conduct a time-intensive, file-by-file review of thousands of claims, many of which had been paid in full. Defendant would have needed to re-adjudicate each claim, incurring substantial administrative costs and devoting hundreds of hours of time and other resources. Even a conservative estimate—such as one hour per file—would have exceeded 800 man-hours.

In contrast, the claims-made structure allowed Defendant to review only the files of class members who submitted claims. This benefited the class: Rather than expend funds on administrative work, which necessarily would have reduced the per-Class Member recovery, Defendant agreed to pay 100% of valid claims, plus fees and costs, resulting in a greater net recovery for participating class members. Moreover, absent such a settlement structure, Defendant could have opted to litigate its motion to dismiss and oppose class certification, further burdening

the Court and risking no recovery for the Class. For these reasons, the claims-made structure was the best resolution for the Class that was agreeable to Defendant.[4]

As one court explained, a claims made settlement is fair and appropriate in cases such as this. *See Braynen v. Nationstar Mortgage, LLC*, No. 14-CV-20726-GOODMAN, 2015 WL 6872519 (S.D. Fla. Nov. 9, 2015). When comparing a claims-made settlement to a "hypothetical direct-payment structured settlement[,]" the latter "is not necessarily any fairer." *Id.* at *14. As in *Braynen*, Imperial "represented[,] and the Court has no reason to believe otherwise, that such a settlement would have been negotiated to provide recovery at a much lower percentage of Settlement Class Members'" taxes and fees. *Id.* As Judge Goodman explained:

> Negotiating for a smaller amount to go to Class Members would, in effect, unfairly reward some Class Members for their own indifference at the expense of those who would take the minimal step of returning the simple Claim Form to receive the larger amount. While a claims-made settlement structure does not guarantee an award to all class members, it does tend to maximize the opportunity available to each class member.

*Id.* "Moreover ... 'determining the amounts to be paid under a direct-pay structure would potentially make settlement more costly than litigation.'" *Lee v. Ocwen Loan Servicing, LLC*, No. 14-CV-60649-GOODMAN, 2015 WL 5449813, at *18 (S.D. Fla. Sept. 14, 2024) (quoting *Hamilton v. SunTrust Mortg, Inc.,* No. 13-60749, 2014 WL 5419507, at *6 (S.D. Fla. Oct. 24, 2014)). The considerations that supported attorneys' fee awards in *Lee* and *Hamilton* also apply here.

### iii.    The Settlement Provides for a Two-Year Period, Despite Defendant's Argument that a One-Year Limitations Period Applied.

---

[4] While the renewed motion for final approval is a joint one, Defendant does not join in the renewed fee motion or the discussion of the fee issue herein. But Defendant does not object to paying, and has indeed agreed to pay, the fee amount requested by Plaintiff, and has authorized Plaintiff's counsel to make the factual statements herein as to Defendant's potential issues with a non-claims made settlement and the reasons therefor.

As discussed, another factor militating in favor of the Settlement is it extended the Class period to 2 years, doubling the time arguably permitted by the Policy. Notably, no insured outside the two-year period releases their claim.

### iv. Class Members Unanimously Support the Settlement.

Plaintiff and Class Counsel support the proposed settlement, lending further support to approval. *See Cotton v. Hinton*, 559 F.2d 1326, 1330 (5th Cir. 1977) (noting that "absent fraud, collusion, or the like," the Court "should be hesitant to substitute its own judgment for that of counsel"); Normand Decl. ¶¶ 37, 46. After robust and comprehensive Notice, *not a single Class Member objected or opted out*. This is an excellent result, indicating overwhelming (indeed, unanimous) approval of the proposed Agreement, which strongly favors approval. *See generally, e.g.*, *In re Oil Spill*, 295 F.R.D. 112, 150 (E.D. La. 2013) (noting that "one indication of the fairness of a settlement is the lack of or small number of objections"); *Quintanilla v. A & R Demolition Inc.*, No. H-04-CV-1965, 2008 U.S. Dist. LEXIS 37449, 2008 WL 9410399, *5 (S.D. Tex. May 7, 2008) ("If only a small number of objections are received, that fact can be viewed as indicative of the adequacy of the settlement.").

It is not that a "small number" of objections were filed—there were zero objections. The importance of this cannot be overstated: Typically, if the Parties believe they secured a favorable Settlement, notice is provided to absent class members so they can review the proposed terms and identify any alleged weaknesses or deficiencies. The main purpose of the final Fairness Hearing— assuming the Parties disagree and choose not to modify the proposed terms considering the objections—is to resolve such objections. Here, there are *no objections to resolve*. There is, in other words, no opposition whatsoever, notwithstanding a robust and comprehensive Notice with a 99.5% delivery rate. ECF No. 44-1, Borges Decl. ¶ 17.

It bears repeating that no class member objected to the fees requested nor to the 100% recovery of alleged damages that Plaintiff and Class Counsel obtained. Moreover, there were no opt outs after 99.5% of the Class received notice.

### 3. The Requested Fee is Supported by the Customary Fee for Similar Work in the Community.

The Court inquired at the Hearing for final approval whether Class Counsel's fees should be limited to the amount claimed by Class Members. Plaintiff respectfully requests the Court award the requested attorneys' fees and costs agreed to in the Settlement, which are paid entirely by Defendant. The public policy behind fee-shifting statutes in insurance claims and in class action cases in general is to compensate Class Counsel with reasonable fees that are not limited to the amount of the claim, so that insureds can bring suits for small amounts that otherwise would be economically irrational for both litigants and attorneys. This is why courts in this community award fees similar in scope to that sought here when a fee-shifting statute is implicated.

Indeed, Louisiana state law provides that in fee-shifting cases such as the instant case, the attorney's fees should not be proportional to the recovery—otherwise, the purpose of fee-shifting statutes would be thwarted. This exact issue was addressed in *Goff v. John Hancock Mut. Life Ins. Co.*, 497 So.2d 747, 750 (La. App. 3 Cir. 1986):

> It is not uncommon for the courts of this state to award attorneys' fees, which exceed the dollar demand of the claimant when an award is appropriate under La. R.S. 22:657.
>
> Union Federal finally contends the $1,000 attorney fee was excessive because it exceeds the $800 claim. The fee is intended to be reasonable compensation for the services required to successfully conclude the claim. To limit the fee to the amount of the claim would effectively deny persons with claims amounting to less than reasonable compensation for minimum services the benefit intended by the statute. We find no manifest error in the trial court's refusal to apply such an arbitrary limitation.

*Id.* at 750 (cleaned up).

So, for example, if an insured sued individually and obtained the average $985.00 in damages, the fee and cost award would not be limited to a percentage of $985.00—it would far exceed it. For that matter, costs alone would likely far exceed $985.00. The purpose of a fee-shifting structure—like the one applicable here—is to make plaintiffs whole for every underpaid claim, even small ones. That this is a class action should not alter the foregoing analysis.

Said another way, it makes little sense to punish attorneys for bringing a claim as a class action, especially where, as here, the fees are paid entirely by the Defendant. Otherwise, courts would incentivize attorneys to file thousands of individual claims with precisely the same allegations, merely to ensure their fees would not be limited to a percentage of the recovery. Frankly, there is no benefit to the Class to reduce attorneys' fees because Defendant has agreed to separately pay such fees. So, any fee reduction would not benefit any Class Member. Instead, the requested fees represent the fair value of the legal services provided to—and at no cost to—the Class. Normand Decl. ¶ 12.

Moreover, Plaintiffs' counsel incurred significant litigation costs of $10,561.56. *Id*. Lodestar fees to date, not including time incurred since the additional notice, exceed $513,506.50. Normand Suppl. Decl. ¶ 3.

Further, the fee award is inclusive of the costs Class Counsel paid on behalf of the class at risk of non-payment, which, to date, are $10,561.56 *Id. at* 3. Had Defendant prevailed on the Motion to Dismiss, opposing class certification, at summary judgment, at trial, or on appeal, Class Counsel would have borne the costs. *Id. at* 3.

### 4. Awards in Similar Cases

"The reasonableness of a fee may also be considered in the light of awards made in similar litigation within and without the court's circuit." *Kemp v. Unum Life Ins. Co. of Am.*, No. CV 14-

0944, 2015 WL 8526689, at *11 (E.D. La. Dec. 11, 2015). Here, the Court need not look further than a recent order granting final approval of a nearly identical settlement involving a related entity to Imperial, Allstate Property & Casualty Insurance Company, which was reached between the same Plaintiffs' Counsel in this action and the same defense counsel. Normand Del. ¶ 19 (citing *Cummings v. Allstate Prop. & Casualty Ins. Co.*, No. 3:222-cv-00247-JWD-EWD, ECF No. 71 (M.D. La. Feb. 10, 2025)). The *Cummings* settlement is materially similar to this settlement in almost every relevant way: the plaintiffs brought the same claims based on the same legal theories; the settlements entitle class members to 100% of their damages on claims-made basis, with attorney's fees, notice and administration costs, and litigation costs to be paid separately by defendants; and the settlements require the defendants to change their business practices. Normand Decl. ¶ 19. In *Cummings*, the district court valued the settlement at $5,292,837.00 and awarded $1,150,000 in attorney's fees—21.7% of the estimated value of the settlement. *Id.* ¶ (citing *Cummings v. Allstate Prop. & Casualty Ins. Co*, No. 3:222-cv-00247-JWD-EWD ECF No. 64-1, at 2 (M.D. La. Nov. 22, 2024)). Although the *Cummings* court valued the common fund based on the amounts made available to the class, as opposed to the actual cash benefits, its conclusion that "the amounts sought by Class Counsel for their Attorneys' Fees and Expenses Award are fair and reasonable given the work that Class Counsel have devoted to the Action as well as the resulted obtained for the Settlement Class" applies equally here. *Id.* ¶ (citing *Cummings*, ECF No. 71, at 5); *see also id.* at 7 (Class Counsel's request for the Attorneys' Fees and Expenses Award is fair and reasonable, given the significant work that Class Counsel has devoted to this Action (including the Settlement)).

**CONCLUSION**

For all the foregoing reasons, Plaintiff and Defendant jointly request final approval of the Settlement between the Parties, Plaintiff respectfully requests that the Court grant final approval of the proposed request for Attorneys Fess, Costs and Service Award and the Parties jointly request the Court to enter an order of final approval that includes the content of the proposed order attached as **Exhibit 2** hereto.

Respectfully submitted this May 20, 2025.

/s/ Soren E. Gisleson
Soren E. Gisleson, La. Bar No. 26302
**HERMAN KATZ GISLESON**
 **& CAIN, LLC**
909 Poydras St., Ste. 1860
New Orleans, LA 70112
Tel: (504) 581-4892
Fax: (504) 561-6024
sgisleson@hhklawfirm.com

Edmund A. Normand*
Florida Bar No.: 865590
**NORMAND PLLC**
3165 McCrory Place, Ste. 175
Orlando, FL 32803
Tel: 407-603-6031
E-Mail: ed@normandpllc.com
E-Mail: ean@normandpllc.com

Adam A. Schwartzbaum*
Florida Bar No.: 093014
**EDELSBERG LAW, P.A.**
20900 NE 30th Ave., Suite 417
Aventura, FL 33180
Tel: 305-725-1245
E-Mail: adam@edelsberglaw.com

Andrew Shamis, Esq.*
Florida Bar No.: 101754
**SHAMIS & GENTILE, P.A.**
14 NE 1st Avenue, Suite 705
Miami, FL 33132
Telephone: 305-479-2299

17

E-mail: ashamis@shamisgentile.com

***Attorneys for Plaintiff***

*\*admitted pro hac vice*

## CERTIFICATE OF SERVICE

      I hereby certify that on this 20th day of May, 2025, I electronically filed a true and exact copy of the foregoing document with the Clerk of Court using the CM/ECF system, which will send notification of such filing to all attorneys of record.

*/s/ Soren E. Gisleson*
Attorney for Plaintiff
