IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF LOUISIANA
ALEXANDRIA DIVISION

DANA BASS, individually and on behalf of     *    Case No.: 1:22-cv-00550
others similarly situated,                   *
                                             *
                    Plaintiffs,              *
                                             *    JUDGE: DAVID C. JOSEPH
VERSUS                                       *
                                             *
IMPERIAL FIRE & CASUALTY                     *    MAGISTRATE: JOSEPH H. L. PEREZ-
INSURANCE COMPANY,                           *    MONTES
                    Defendant.               *
                                             *
                                             *
* * * * * * * * * * * * * * * * * * * * * * * *

**PARTIES' JOINT SUPPLEMENTAL SUBMISSION
IN SUPPORT OF FINAL APPROVAL OF SETTLEMENT**

Plaintiff Dana Bass ("Plaintiff"), individually and on behalf of the Settlement Class, and

Defendant Imperial Fire and Casualty Insurance Company ("Imperial"), in furtherance of this

Court's June 12, 2025, Order [ECF No. 56], hereby jointly submit this Joint Supplemental

Submission in Support of Final Approval of Settlement (the "Submission").

**I.      INTRODUCTION**

After providing Settlement Class Members with four rounds of notice via email and U.S.

first-class mail, the parties are proud to report that 1,322 of the approximately 5,132 Settlement

Class Members have submitted claims, representing a claims rate of 25.5%. After verifying and

approving the Claim Forms, the Settlement Administrator estimates that Settlement Class

Members will receive $827,446.59 in payments. Now the Parties respectfully submit that the

Settlement has achieved exemplary results for Settlement Class Members and should receive Final

Approval.

The litigation events and facts supporting final approval of the Settlement are summarized in the initial Motion for Final Approval of Settlement ("Final Approval Motion"), ECF No. 46, the Motion for Approval of Attorneys' Fees, Costs and Service Award ("Fee Motion"), ECF No. 42, and the Joint Renewed Motion for Final Approval of Class Action Settlement ("Renewed Final Approval Motion"), ECF No. 53. The Settlement Agreement ("Agreement") was filed at ECF No. 37-1.

In the Court's Order dated June 12, 2025, the Court set a Second Fairness Hearing on August 15, 2025. *See* Second Supplemental Declaration of Edmund A. Normand ("2d Supp. Normand Decl."), attached as **Exhibit B**, ¶ 4. The Court also extended the deadline for Class Members to submit claims to August 1, 2025, and directed a fourth round of notice to all Class Members via email and mail. *Id.* The Court noted concerns regarding a low claims rate following the initial notice process, and the strong response to the third round of notice, which yielded 342 new claims. *Id.* The Court was particularly concerned with ensuring Class Members receive full due process protections given the claims made settlement structure that requires Class Members to submit claims to receive compensation. *Id.* The Court required the Parties to submit evidence at the Second Fairness Hearing on (1) the factors outlined in Fed. Civ. P. Rule 23(e); (2) additional evidence on the factors from *Reed v. Gen. Motors Corp.*, 703 F.2d 170, 172 (5th Cir. 1983), particularly on the likelihood of success on the merits in the absence of the Settlement; and (3) testimony from a representative of Defendant regarding the timing and rationale behind changes in Defendant's practices concerning Sales Tax and Transfer Fees. *Id.*

The Parties submitted supplemental Class notices to the Court for approval, and the Court found the supplemental notices satisfy the requirements of due process and constitute the best notice practicable under the circumstances. *Id.* ¶ 5. Further, the Court found the supplemental

notices adequately advise the Class Members of their rights and clearly and concisely present all aspects of the Action and Settlement in plain, easily understood language. *Id.* The Court further ordered that, by August 7, 2025, the Parties provide updated facts about the Settlement, including (a) cash benefits paid to Class Members, (b) notice and administration costs, (c) Plaintiffs' litigation costs, and (d) updated count of claimants. *Id.*

On June 20, 2025, the Notice Administrator sent a reminder notice by email to all Settlement Class Members who had not yet submitted a Claim Form, reminder notice by email to all Settlement Class Members who had not yet submitted a Claim Form, and for whom an email notice was not returned as undeliverable during the initial email notice campaign. *See* Second Supplemental Declaration of Eamon Mason Regarding Implementation of Notice and Settlement Administration ("2d Supp. Mason Decl."), attached as **Exhibit A**, ¶ 5. Also on June 20, 2025, the Notice Administrator mailed a second reminder postcard notice including a detachable Claim Form, pre-populated with the claimant's information, with prepaid postage to all Settlement Class Members who had not yet submitted a Claim Form. *Id.* As with the third round of additional notice, this fourth round did yield additional claims. *Id.* Specifically, 401 new Claim Forms were received as a result of these notices. *Id.* The average value per claim is $647.45. *Id.*

This Supplemental Submission provides the Court with the updated facts and evidence concerning the Settlement and evidence on the Rule 23(e) and *Reed* factors.

## II.    UPDATED SETTLEMENT FACTS

### A. Updated Count of Claimants

The Parties report that, after completing the third round of notice to Class Members required by this Court's June 12, 2025, Order, the Claim Administrator has received a total of 271 newly filed claims. 2d Supp. Mason Decl. ¶ 5. The total count of Claim Forms filed is 1,311, out of which 1,267 have been verified and approved for payment. *Id.*

3

### B. Cash Benefits Paid to Class Members

The total amount to be paid to Class Members for the approved claims is 827,446.59. *Id.* ¶ 5.

### C. Notice and Administration Costs

As of August 7, 2025, the total expenses for notice and administration costs incurred by the Settlement Administrator are $76,554.68. *Id.* ¶ 10.

### D. Plaintiff's Litigation Expenses

Plaintiff's total litigation expenses are $13,823.06. 2d Supp. Normand Decl. ¶ 7.

### III. THE *REED* FACTORS PROVE THE SETTLEMENT IS FAIR, ADEQUATE, AND REASONABLE.

Rule 23(e) requires a court find that a settlement is "fair, reasonable, and adequate" before final approval. Fed. R. Civ. P. 23(e). The Fifth Circuit has provided the *Reed* factors for district courts to consider in determining if a settlement satisfies the "fair, reasonable, and adequate" standard. *Stott v. Cap. Fin. Servs., Inc.*, 277 F.R.D. 316, 343 (N.D. Tex. 2011). Whether a proposed agreement is sufficiently fair and reasonable is analyzed under a six-factor test: (1) the existence of any fraud or collusion; (2) the complexity, expense, and likely duration of the litigation; (3) the stage of the proceedings and the amount of discovery; (4) the probability of success; (5) the range of possible recovery; and (6) the opinions of the counsel, class representatives, and absent class members. *Reed*, 703 F.2d at 172.

The parties have already briefed these *Reed* factors in the Final Approval Motion. The Parties incorporate the arguments and law provided in that briefing but wish to bring the following additional points and law to the Court's attention. Applying those factors here, the Agreement should be approved because it is fair, reasonable, and adequate, and is not the subject of collusion.

### A. Plaintiff's Probability of Success on Obtaining Ultimate Class-wide Recovery in Litigation Faces Significant Obstacles.

Because the Court specifically asked for further analysis of the likelihood of success on the merits *Reed* factor, the parties address it first. In evaluating the probability of success on the merits as a factor in finally approving a class action settlement, courts examine the obstacles to a class-wide judgment in favor of the class on liability and damages through litigation. *Spegele v. USAA Life Ins. Co.*, No. 5:17-CV-967-OLG, 2021 WL 4935978, at *8 (W.D. Tex. Aug. 26, 2021). This factor weighs in favor of settlement when the plaintiff "must prevail on numerous hotly contested issues of fact and law in order to establish liability." *In re Liberty Nat'l Ins. Cases*, 2006 WL 8436814, at *18. For example, courts consider whether affirmative defenses—such as statutes of limitations—or proving elements of the plaintiff's claims pose substantial barriers to recovery. *Id.* (approving settlement when class had to prove its claims were not barred by the statute of limitations); *In re Prudential Ins. Co.*, 148 F.3d at 319–20 (same). Additionally, courts assess the likelihood of obtaining and maintaining class certification, noting that the prospects for certification, and the risk of decertification at any stage, can greatly affect the value and viability of the class claims. *DeHoyos*, 240 F.R.D. at 290; *see also Spegele*, 2021 WL 4935978, at *8 (approving final settlement when class certification was being litigated on appeal); *In re Liberty Nat'l Ins. Cases*, 2006 WL 8436814, at *18 (approving settlement when novelty of claims asserted and individual issues that could develop during litigation created a risk of the class being decertified during litigation).

The existence of similar cases with unfavorable results for plaintiffs is another factor that shows a lower probability of success in litigation. *In re Prudential Ins. Co.*, 148 F.3d at 319-20 (approving settlement when similar case in state court overturned a judgment in favor of a plaintiff). Yet, even when there is a similar favorable decision in the jurisdiction, courts still favor settlement when "the putative class would face the usual hurdles of class action litigation,

including prevailing on a motion for class certification and any potential interlocutory appeals of such an order, defending against a motion for summary judgment, and prevailing at trial." *Kemp v. Unum Life Ins. Co. of Am.*, No. CV 14-0944, 2015 WL 8526689, at *6 (E.D. La. Dec. 11, 2015).

In this case, Defendant has asserted numerous defenses that put Plaintiff's likelihood of success on the merits substantially at risk. Indeed, there is a fully briefed Motion to Dismiss on file in this case that Defendant contends it would have a significant chance to prevail on if a settlement had not eventuated. In that Motion, Defendant argued that (1) this suit is barred by the contractual prescription period; (2) Defendant did not violate Section 22:1892B to constitute a breach of the Policy; (3) Plaintiff's claims are within the scope of Defendant's Policy's appraisal provision; (4) the Policy does not require payment of sales tax and fees; and (5) Plaintiff's statutory claims for bad faith and penalties fail together with Plaintiff's breach of contract claim. Each of these arguments presents a valid defense that would prevent Plaintiff from succeeding on the merits and obtaining class-wide relief.

On the contractual prescription period, Defendant has argued that Plaintiff's claims are time-barred under the Legal Action Against Us provision in the Policy that requires actions be commenced within the time period set forth in the bodily injury statute of limitations in the law of the state where the accident occurred. Policy, pp. 28–29 of 34. Here, the accident occurred in Louisiana, where the bodily injury statute of limitations is one year. La. C.C. art. 3492.[1] Plaintiff alleges that her date of loss was January 8, 2021, (ECF No. 1 ¶ 22), yet she did not file her Petition until over a month after the prescription period, on February 24, 2022. Plaintiff has argued in response that the Policy language is ambiguous in part because La. C.C. art. 3492 is not the only

---

[1] Since filing the Motion to Dismiss in 2022, the Louisiana personal injury statute of limitations has been amended from one to two years. Compare La. C.C. art. 3492 (repealed) with La. C.C. art. 3493.11. The new statute of limitations only applies to incidents occurring on or after July 1, 2024, and is thus not applicable here. La. C.C. art. 3493.11.

bodily injury statute of limitations. ECF No. 13, at 4–5. But without any directly applicable precedent to support Plaintiff's argument, Plaintiff will face a high barrier to prove her claim is not time barred, which would then preclude her from representing a class in this case.

Plaintiff will also have to prove a violation of La. R.S. § 22:1892(B)(5) to succeed on her breach of contract claim. Section (B)(5) permits insurers to pay "[t]he retail cost as determined from a generally recognized used motor vehicle industry source; such as . . . a guidebook that is available to the general public." La. R.S. § 22:1892(B)(5)(b). Plaintiff alleges that Defendant violated this subsection by relying on the Kelley Blue-Book, which allegedly relies solely on vehicles sold by private parties, and by allegedly failing to provide its insureds any valuation documents generated by the Kelley Blue-Book system. ECF No. 1 ¶¶ 32–33. Defendant has presented robust arguments that neither allegation constitutes a violation of (B)(5). This subsection expressly permits relying on guidebooks, like the Kelley Blue-Book, that is available to the general public. La. R.S. § 22:1892(B)(5)(b). Further, when relying on publicly available guidebooks, insurers have no obligation to provide insureds valuation documents. *See id.* Nor does Section (B)(5) prohibit using a guidebook that relies solely on vehicles sold by private parties. *See id.* Again, Plaintiff does not have direct case law to support her claim that Defendant violated Section (B)(5), and the Parties will have to engage in motion practices and possibly appeals to resolve their arguments on the interpretation of this subsection.  In all events the class has not released this issue as part of the settlement, so this sort of claim is still open to any class member who wishes to bring it.

In the alternative, Defendant also argued that Plaintiff's claims fall under the appraisal provision of the Policy because she disputes the amount of loss on her claim. Until the amount of loss has been resolved through appraisal, Defendant is not liable for allegedly failing to properly

pay the actual cash value of Plaintiff's vehicle. Further, completion of appraisal is a condition precedent to filing a suit on the Policy. Policy at p. 28 of 34. Louisiana state and federal courts have enforced similar appraisal conditions in policies to enforce appraisal and, in some instances, dismiss the suit. *See, e.g.*, *Girard v. Atl. Mut. Ins. Co.*, 198 So. 2d 444, 447 (La. App. 4th Cir. 1967). In response, Plaintiff has cited case law from other jurisdictions declining to enforce appraisal on the Sales Tax and Fees issue. ECF No. 13, at 16–18. Still, Plaintiff has not cited to a case in Louisiana supporting its position. *Id.* Thus, Plaintiff still has the obstacle of litigating this issue through dispositive motions and potential appeals.

Defendant has further argued that the Policy does not require payment of Sales Tax and Fees, and thus Plaintiff's breach of contract claim may fail on this basis. Under the Policy, ACV is a function of fair market value and will be paid based on specific characteristics of "the damaged property at the time of the accident or loss." Property at pp. 25–26 of 34. There is no requirement to pay Sales Tax and Fees because they are associated with transfer of ownership of the replacement vehicle, not "the damaged property." In pursuing the Sales Tax and Transfer Fees sought in this Action, Plaintiff must overcome legal authority inconsistent with her claims. Specifically, Louisiana appellate courts have held that sales tax is not an element of ACV owed by an insurer in the event of a total loss. *State Farm Mut. Auto. Ins. Co. v. Berthelot*, 98-1011 (La. 4/13/99), 732 So. 2d 1230, 1235; *Clark v. Clarendon Ins. Co.,* 2002-1314 (La. App. 3d Cir. 3/26/03), 841 So. 2d 1039. Other courts have also ruled against insureds on similar claims. *See, e.g., Wilkerson v. Am. Family Ins. Co.,* 997 F.3d 666 (6th Cir. 2021); *Sigler v. Geico Cas. Co.*, 967 F.3d 658 (7th Cir. 2020). The reasoning of these opinions may well preclude Plaintiff from obtaining the relief sought here.

As to the Louisiana cases in particular, Plaintiff disputes the applicability of these decisions given the enactment in 2010 of La. Rev. Stat. § 22:1892(B)(5), which provides in part that settlement payments of total loss motor vehicle claims based on ACV should be "based on the actual cost to purchase a comparable motor vehicle." *See* 2010 La. H.B. 1011. First of all, Defendant has argued that nothing in this statute is inconsistent with Defendant's original practice of not paying sales tax and transfer fees unless a comparable motor vehicle has actually been purchased. In any event, no Louisiana case has adopted Plaintiff's position on this point, so the aforementioned Louisiana cases finding against Plaintiff are certainly arguably good law. At the very least, there is genuine uncertainty as to how the case would be decided on the merits (to say nothing of class certification). The Agreement resolves these very significant issues in favor of the Settlement Class, allowing full recovery of this hotly contested issue to any class member who makes a claim.

In sum, Plaintiff has significant hurdles to overcome to ultimately succeed on the merits and prove damages at trial. *See In re Liberty Nat'l Ins. Cases*, 2006 WL 8436814, at *18 (noting settlement is favored when plaintiff "must prevail on numerous hotly contested issues of fact and law in order to establish liability"). Even if Plaintiff survives the Motion to Dismiss, the legal issues presented in the Motion will continue to present obstacles to Plaintiff's recovery in future dispositive motions and on appeal. Additionally, the novelty of Plaintiff's claims and lack of direct legal authority adds the risk of not having a certified class throughout the litigation. *See id.* (noting novelty of claims asserted and individual issues that could develop during litigation created a risk of the class being decertified during litigation). Besides, Plaintiff will still "face the usual hurdles of class action litigation, including prevailing on a motion for class certification and any potential interlocutory appeals of such an order, defending against a motion for summary judgment, and

prevailing at trial." *Kemp*, 2015 WL 8526689, at *6. Thus, the probability of success factor weighs heavily in favor of approving the Settlement.

In this regard, the Court asked for testimony from a representative of the Defendant regarding its sales tax and transfer fee practice changes. While full testimony on that point will be provided at the fairness hearing, it should be noted that Defendant very clearly has never admitted any liability or wrongdoing in this case and felt its prior practice of paying sales tax and transfer fees only upon proof of replacement of the vehicle was not a violation of law. While Defendant agreed to change this practice (initially, proximate to when this suit was filed, paying sales tax and fees up front when the Defendant retained the salvaged vehicle regardless of proof of replacement, except in leased vehicle situations, and then as part of the ultimate settlement agreeing to extend this practice to leased and owner-retained salvage vehicles), this was the result only of an abundance of caution and a desire to avoid contested and costly litigation, and in no way should reflect on the strong obstacles Plaintiff would have to success on the merits as discussed above.

## B.  The Agreement Was Not a Product of Fraud or Collusion.

The Agreement is not the product of fraud or collusion as it was rigorous, hard fought, and the product of arm's length negotiation between sophisticated counsel. *See* ECF No. 37-2 ("Normand Decl.") ¶¶ 15–26. Courts find no fraud or collusion is present when the parties engaged in arm's length settlement negotiations amongst experienced counsel. *See, e.g.*, *Spegele*, 2021 WL 4935978, at *5 ("The Court further finds that the arm's length nature of the settlement negotiations in this case amongst experienced counsel for both parties with the assistance of a mediator supports a finding that the Settlement is fair, reasonable, and adequate."); *DeHoyos*, 240 F.R.D. at 287 (finding no fraud or collusion when parties represented by experienced counsel engaged in over fifty negotiating sessions in arm's length negotiations). The assistance of a mediator in the

settlement negotiations also supports finding no fraud or collusion is present. *Spegele*, 2021 WL 4935978, at *5; *see also Kemp*, 2015 WL 8526689, at *5 (finding no fraud or collusion after parties engaged in a mediation); *Celeste v. Intrusion Inc.*, 2022 U.S. Dist. LEXIS 226841, at *12 (E.D. Tex. Dec. 16, 2022) ("The parties entered the proposed settlement agreement after a full-day mediation—which suggests the settlement was not the result of improper dealings." (internal quotations omitted)); *Mitchell*, 2021 WL 736895, at *1 (approving settlement after extensive negotiations and mediations); *Buffington*, 2024 WL 3666408, at *2 (same).

Another factor showing settlement is the result of an arm's length negotiation is if settlement is achieved after years of "hard-fought litigation." *In re Liberty Nat'l Ins. Cases*, 2006 WL 8436814, at *19; *see also Kemp*, 2015 WL 8526689, at *5 (finding no fraud or collusion when "the proceedings were sharply contested and have been pending for more than two years"). For example, in *In re Liberty Nat'l Ins. Cases*, the court found that the class action settlement was reached through arm's length negotiations when it was achieved "after years of hard-fought litigation" and "was negotiated in an adversarial manner after substantial factual investigation, extensive legal analysis, expert investigation, a hotly contested class certification, and thorough discovery." 2006 WL 8436814, at *19.

When there are no allegations or indications of fraud or collusion, courts presume that no fraud or collusion exists. *DeHoyos*, 240 F.R.D. at 287 (citing *Ruiz v. McKaskle*, 724 F.2d 1149, 1152 (5th Cir. 1984)) ("There is also a presumption of no fraud or collusion occurred between counsel, in the absence of any evidence to the contrary."); *see also Welsh v. Navy Fed. Credit Union*, No. 16-CV-1062, 2018 U.S. Dist. LEXIS 227456, at *33 (W.D. Tex. Aug. 20, 2018) ("The Court may . . . presume that no fraud or collusion occurred between opposing counsel in the absence of any evidence to the contrary."); *DeHoyos*, 240 F.R.D. at 287. Thus, courts routinely

find no fraud or collusion when no evidence of collusion is presented. *See, e.g.*, *In re Liberty Nat'l Ins. Cases*, 2006 WL 8436814, at *19.

The Parties here entered a settlement after two years of hard-fought litigation, including briefing a motion to dismiss on the merits. Normand Decl. ¶ 21; ECF Nos. 9, 13. The Parties also engaged in a mediation with the assistance of sophisticated counsel on both sides. The Parties attended a full-day mediation with Mike Ungar, a highly regarded and experienced mediator and ultimately agreed to the material terms of the Agreement. Normand Decl. ¶ 21. After agreeing to the scope of the proposed Settlement Class and the monetary benefits to Settlement Class Members, the Parties separately, and with Mr. Ungar's assistance, negotiated and reached an agreement concerning the payment of the costs of notice and administration, attorneys' fees, litigation expenses and costs, and service award. Further, there are no allegations or indications of fraud or collusion.  Given the extensive history of litigation, arm's length negotiations, and assistance of a mediator, the fraud or collusion factor heavily weighs in favor of final approval of the Agreement.

### C. The Complexity, Expense, and Likely Duration of the Litigation Favor Settlement Over Continuing to Litigate this Action.

In the class action context, courts in the Fifth Circuit find that "settlement avoids consuming additional judicial and attorney time and resources, and avoiding such costs weighs in favor of settlement." *Kemp*, 2015 WL 8526689, at *5. As the court noted in *Kemp*, "[c]lass action litigation is inherently complex, and complex litigation is inevitably costly in terms of both time and money." *Id.* The existence of defenses also favors approving settlement because these defenses mean that even if the class is successful, "[a]pproving this settlement now avoids protracted litigation costs and risks to the settlement class and provides them with immediate recovery." *1988 Tr. for Allen Child. Dated 8/8/88 v. Banner Life Ins. Co.*, 28 F.4th 513, 526 (4th Cir. 2022) (internal

quotations omitted) (alteration in original). A case involving vigorously contested liability issues and manageability concerns indicates that continued litigation would be arduous and expensive. *Cedarview Mart, LLC*, 2022 WL 16748790, at \*4 (approving settlement because proposed settlement "has the benefit of providing substantial benefits to Class Members now, without further litigation, under circumstances where the liability issues are still vigorously contested among the Parties"); *Free*, 2023 WL 11909777, at \*3 (approving settlement when the "liability issues in this Action and the suitability of this Action for certification of a litigation class have been vigorously contested, particularly with respect to litigation manageability requirements").

Courts also consider the litigation history, such as years of motions practice, and the potential for further dispositive motions, expert discovery, likelihood of future appeals, and post-trial proceedings, as factoring in favor of approving settlement. *See Mitchell*, 2021 WL 736895, at \*1 (approving final settlement after years of litigation when "Class Counsel was well positioned to evaluate the benefits of the Settlement, taking into account the expense, risk, and uncertainty of trial and protracted appeal thereafter with respect to numerous difficult questions of law and fact"); *DeHoyos*, 240 F.R.D. at 291–92 (approving final settlement when litigation had a long history of protracted litigation and additional litigation would likely include contested class certification proceedings, appeals, dispositive motions, expert discovery, pretrial filings, lengthy trial, and post-trial proceedings); *In re Liberty Nat'l Ins. Cases*, 2006 WL 8436814, at \*12–13 (same).

The complexity, expense, and likely duration of litigation all favor approving the final settlement between the Parties. This class action with approximately 5,132 class members is inherently complex and will swallow the Parties' and this Court's resources if it continues to trial without a settlement. The history of this case, which has been outstanding for over two years and involved protracted motion to dismiss briefing on the merits of the Class claims, signals that this

action will continue to be arduous and expensive moving forward. Given the defenses raised in the motion to dismiss briefing, the Parties expect this action will involve both dispositive motions briefing and appeals on numerous legal issues. The Parties have also engaged in expert testimony, further complicating litigation in this case. Normand Decl. ¶¶ 14–15. Considering the history of this case, Class counsel is well positioned to evaluate the potential risks of continuing litigation against the benefits of the Agreement, which would afford class members who make a claim 100% of the ACV Sales Tax and Transfer Fees in due course. Normand Decl. ¶ 33; Agreement ¶ 66. Accordingly, the complexity, expense, and likely duration of the litigation factor weighs in favor of approving final Settlement to avoid the risks of a lengthy litigation for Class Members who would greatly benefit from the Agreement's terms.

### D. The Stage of Proceedings and Amount of Discovery Completed Is Sufficient for the Parties to Adequately Assess the Agreement.

When considering final approval of a class action settlement under the factor of the stage of proceedings and the amount of discovery completed, courts focus on whether the parties have developed a sufficient factual and legal understanding of the case to make an informed decision about settlement. *DeHoyos*, 240 F.R.D. at 292. Courts do not require that litigation reach a particular procedural milestone or that formal discovery be exhaustive. *Kemp*, 2015 WL 8526689, at *5–6; *In re Liberty Nat'l Ins. Cases*, 2006 WL 8436814, at *14. "Even settlements reached at a very early stage and prior to formal discovery may be approved where the settlement represents substantial concessions by both sides and there is no evidence of collusion." *In re Liberty Nat'l Ins. Cases*, 2006 WL 8436814, at *14. Instead, courts look for evidence that the parties "have gathered sufficient data on the claims at issue to support the factual bases on which a settlement is premised." *Kemp*, 2015 WL 8526689, at *5–6.

Sufficient data gathering can come both from formal discovery, i.e. document production, depositions, and expert analysis, and through informal exchanges of information or class counsel's own thorough investigation. *In re Prudential Ins. Co.*, 148 F.3d at 319 (approving final settlement when class counsel through formal and informal discovery reviewed a multitude of documents provided by the defendant, conducted its own interviews, took depositions, and had sufficient time to review the discovery materials it collected). Thus, courts find this factor satisfied where the record shows that settlement discussions occurred after review and analysis of voluminous documents and interviews and depositions of key witnesses. *See, e.g.*, *1988 Tr. for Allen Child.*, 28 F.4th at 525 (approving final settlement when discovery included significant number of documents); *In re Liberty Nat'l Ins. Cases*, 2006 WL 8436814, at *14 (approving final settlement when parties exchanged a high volume of documents and took depositions).

The parties' ability to evaluate the merits of the case is further supported when class counsel have retained experts to analyze complex data. *See DeHoyos*, 240 F.R.D. at 292 (approving final settlement when defendant produced voluminous amount of documents and electronic data and class counsel retained experts to analyze data). Even in cases where formal discovery is limited, courts recognize that informal discovery, investigation, and the parties' prior experience with similar claims can provide a sufficient basis for informed settlement. *See Kemp*, 2015 WL 8526689, at *5–6 (approving final settlement when class counsel interviewed class members and reviewed available documentation and data before litigation, and during the litigation the parties exchanged data, affidavits, claims information for class member policyholders, and many other documents, and information was reviewed by class counsel and experts).

Here, Class Counsel "have gathered sufficient data on the claims at issue to support the factual bases on which a settlement is premised" through both formal and informal discovery.

*Kemp*, 2015 WL 8526689, at *5–6. Specifically, Class Counsel have conducted an extensive pre-suit investigation into the factual underpinnings of the practices challenged in this action as well as the applicable law. From June 28, 2022, through December 12, 2023, the Parties also engaged in an extensive discovery process, including fact and expert discovery. Normand Decl. ¶¶ 14–15. Class Counsel reviewed the information it received in formal and informal discovery, which included data and information concerning insureds with policies like those underwritten by Defendant, spreadsheets containing claim information for Class Members, and thousands of data entries relating to the ACV values. *Id.* ¶¶ 14–16. Class Counsel also hired experts to review all materials and provide data analysis on the Class claims and offer testimony regarding damages. *Id.* ¶¶ 15, 19. From this extensive formal and informal discovery, Class Counsel have certainly developed a sufficient factual and legal understanding of the case to make an informed decision about settlement. Thus, this factor also weighs in favor of approving settlement.

### E. The Range of Possible Recovery Compared to the Recovery Under the Agreement Favors Approving Settlement.

The range of possible recovery compares the amount of the proposed settlement with the present value of the damages the class would likely recover if successful, appropriately discounted for the risk of not prevailing. *In re Prudential Ins. Co.*, 148 F.3d at 322. For example, in *In re Prudential Insurance Co.*, the Third Circuit found this factor favors settlement when class members with strong claims for relief "receive full compensation without paying attorneys fees and without undue delay." *Id.* Lower levels of compensation for class members with less clear claims or who had not elected to bring a claim also constituted a fair settlement. *Id.* at 323. Courts still approve recovery that is "squarely in the middle of the possible range of outcomes," recognizing that "[c]ompromise is the essence of a settlement." *Kemp*, 2015 WL 8526689, at *6. Courts have further found that this factor favors settlement for claims made settlements, which

"provide[] substantial monetary benefits to Class Members who timely submit completed Claim Forms." *Cedarview Mart, LLC*, 2022 WL 16748790, at *3. These types of settlements are even more favorable when, as here, the defendant funds the costs of notice and settlement administration. *Mitchell*, 2021 WL 736895, at *3.

Further, facing many obstacles to ultimate recovery favors settlement over continuing litigation. *In re Liberty Nat'l Ins. Cases*, 2006 WL 8436814, at *18. The swift recovery of a settlement is balanced against the fact that "[a]ny of the obstacles to a classwide judgment's ultimate affirmance on appeal—which, even if it came to pass, would not occur for years—could result in class members taking nothing or obtaining significantly less in damages than requested." *Spegele*, 2021 WL 4935978, at *8; *see also Free*, 2023 WL 11909777, at *3 ("This Proposed Settlement has the benefit of providing substantial benefits to Class Members now, without further litigation, under circumstances where the liability issues are still vigorously contested among the Parties[.]"). Thus, the court in *Spegele* found "that the Settlement, which ensures recovery for policy owners of a significant percentage of the alleged overcharges they have suffered and without delay is a fair, reasonable, and adequate result given the risks of not settling." 2021 WL 4935978, at *8. When assessing this factor, courts "may rely on the representations of counsel in considering whether the compromise represents a desirable resolution given the possible range of recovery." *Kemp*, 2015 WL 8526689, at *6.

Here, the settlement affords maximum recovery to Class Members far exceeding the present value of possible recovery considering the many obstacles Plaintiff faces before ultimate recovery in litigation. Defendant agreed to a settlement in which Settlement Class Members who make a timely claim are entitled to 100% of the Sales Tax and Transfer Fees sought in this action. Agreement ¶ 66; Normand Decl. ¶ 32. The cash benefit available to Class Members per the

Agreement is approximately $3,740,706.00. Agreement ¶ 68. Under the Agreement, attorneys' fees, administrative expenses, and the class representative service award are to be paid by Defendant separately, meaning these costs will not reduce the amount to be paid to Settlement Class Members who submit valid claims. *Id.* ¶ 82; Normand Decl. ¶¶ 36–37. The Agreement also secured the practice change by Defendant referred to above. On the other hand, as discussed previously, the obstacles to ultimate recovery in the future are substantial. Even if Plaintiff succeeded in obtaining maximum recovery, that recovery would be diminished by the time and expense of continuing the complex class action litigation. Accordingly, this factor too favors approval of the Settlement.

### F. Opinions of the Counsel, Class Representatives, and Absent Class Members All Support the Settlement.

In considering the opinions of the counsel, class representatives, and absent class members, courts strongly weigh the lack of, or low number of, objections to the settlement. *In re Prudential Ins. Co.*, 148 F.3d at 318 (finding this factor weighed in favor of settlement when 19,000 class members, or .2 percent of the class, opted out and only 300 policyholders filed objections). Thus, a handful of vociferous objections to a proposed settlement will not defeat a settlement. *In re Prudential Ins. Co.*, 148 F.3d at 318; *see also 1988 Tr. for Allen Child.*, 28 F.4th at 527 (considering the low number of objectors favored approving settlement despite the "ferocity" of a class member's objection); *Spegele*, 2021 WL 4935978, at *9 ("Finally, the very small number of class members who have excluded themselves (26) from the Settlement or objected thereto (4), indicates the Settlement is well-received by absent class members, which supports approval of the Settlement."). In *DeHoyos*, the court found the wide reach of the notice versus the small number of objections, ten individual and group objections, weighed in favor of approving settlement. 240 F.R.D. at 292. The lack of objections is particularly salient when the parties employed an extensive

notice program to reach all potential class members. *In re Liberty Nat'l Ins. Cases*, 2006 WL 8436814, at *14; *see also Cedarview Mart, LLC*, 2022 WL 16748790, at *5 (same); *Mitchell*, 2021 WL 736895, at *5 (same).

Courts heavily rely on Class Counsel's opinion that settlement is a good result for the settlement class. *Spegele*, 2021 WL 4935978, at *8 ("Thus, while the [c]ourt may not simply defer to class counsels' opinion, because the other factors also support a finding that the proposed Settlement is fair, reasonable, and adequate, Class Counsel's recommendation that the Settlement satisfies the requirements for approval is entitled to substantial weight." (internal quotations omitted)). "In reviewing the opinions of counsel, the Court is to bear in mind that counsel for each side possess the unique ability to assess the potential risks and rewards of litigation, and a presumption of correctness is said to attach to a class settlement reached in arms' length negotiations between experienced, capable counsel after meaningful discovery." *DeHoyos*, 240 F.R.D. at 292 (internal quotations omitted).

Here, the Parties and Class Counsel unanimously support the proposed Settlement. Further, not a ***single*** Class Member objected or opted out. The notices sent a detachable Claim Form, pre-populated with the claimant's information and prepaid postage, via U.S. first-class mail to 5,132 potential Settlement Class Members and via email for those with email addresses included in the class data. Borges Decl. ¶¶ 11–17 & Ex. B thereto. The notice also directed recipients to the settlement website. Through this notice plan, 99.5% of the Settlement Class Members received direct, actual notice. Borges Decl. ¶ 17. The lack of class members who have excluded themselves from settlement or objected thereto "indicates the Settlement is well-received by absent class members, which supports approval of the Settlement." *Spegele*, 2021 WL 4935978, at *9. Indeed,

here, there are no objections to resolve. This strongly militates in favor of approving the proposed settlement.

The facts of this case mirror those in *Kemp*, in which the court granted final approval of settlement. 2015 WL 8526689, at *7. There, "Class Counsel and Lead Plaintiff [] both expressed their approval of the settlement, Defendant did not oppose the settlement and indicated approval at the final approval hearing, and no objections or opt-outs [were] received by Class Counsel." *Id.* The court further found that "the fact that no one has stepped forward to criticize the settlement suggests class-wide support for the proposal." *Id.* "Therefore, this factor also weighs in favor of settlement." *Id.*

## II.    THE RULE 23(e) FACTORS WEIGH IN FAVOR OF FINAL APPROVAL.

The Court has also asked the parties to address the Rule 23(e) factors. To determine whether a settlement is fair, reasonable, and adequate, Rule 23(e) instructs courts to consider whether:

(A) the class representatives and class counsel have adequately represented the class;

(B) the proposal was negotiated at arm's length;

(C) the relief provided for the class is adequate, taking into account:

   (i)   the costs, risks, and delay of trial and appeal;

   (ii)  the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims;

   (iii) the terms of any proposed award of attorney's fees, including timing of payment; and

   (iv) any agreement required to be identified under Rule 23(e)(3); and

(D) the proposal treats class members equitably relative to each other.

"Because the public interest strongly favors the voluntary settlement of class actions, there is a strong presumption in favor of finding the settlement fair, reasonable, and adequate." *In re Oil*

*Spill by Oil Rig Deepwater Horizon in Gulf of Mexico, on Apr. 20, 2010*, 910 F. Supp. 2d 891, 930–31 (E.D. La. 2012), *aff'd sub nom. In re Deepwater Horizon*, 739 F.3d 790 (5th Cir. 2014). Courts find Rule 23(e) is met when the *Reed* factors favor settlement. *See, e.g.*, *DeHoyos*, 240 F.R.D. at 287 (finding each of these factors support finding the settlement was fair, reasonable, and adequate under Rule 23(e) when the *Reed* factors supported settlement); *Stott*, 277 F.R.D. at 343 (N.D. Tex. 2011) (same); *In re Heartland Payment Sys., Inc. Customer Data Sec. Breach Litig.*, 851 F. Supp. 2d 1040, 1063 (S.D. Tex. 2012) (same).

So, initially, considering the strong showing above that all the *Reed* factors favor Settlement, the parties respectfully submit that the Rule 23(e) factors are also met. While the discussion above has already touched on the Rule 23(e) factors as part of the *Reed* analysis, the parties separately address those factors below.

### A. The Class Representatives and Class Counsel Have Adequately Represented the Class.

Class Counsel has taken substantial discovery and consulted with expert witnesses regarding entitlement to and computation of alleged damages before engaging in settlement negotiations. Normand Decl. ¶¶ 5–19. Class Counsel have also vigorously opposed Defendant's Motion to Dismiss filed in this case. Plaintiff and Class Counsel have always represented the Class Members' best interests in litigating this action and reaching a settlement agreement that provides great value to Class Members.

### B. The Agreement Was Negotiated at Arm's Length.

The Parties entered a settlement only after two years of hard-fought litigation. Normand Decl. ¶ 21. The Parties also engaged in a mediation with the assistance of sophisticated counsel on both sides. The Parties attended a full-day mediation before ultimately agreeing to the material terms of the Agreement. Normand Decl. ¶ 21.

### C. The Relief Provided for the Class is Adequate.

The relief provided for the class is adequate, taking into account the sub-factors of Rule 23(e)(C)(i)–(iv). The costs, risks, and delay of trial and appeal are exceedingly high given the legal arguments raised in Defendant's Motion to Dismiss. The class action is a complex litigation that will take years in discovery, dispositive motions, and appeals before the Class could ultimately recover. The proposed method of distributing relief to the Class, including the method of processing class-member claims, is highly effective. The Agreement provides Class Members who make a claim 100% of the Sales Tax and Transfer Fees sought. Agreement ¶ 66; Normand Decl. ¶ 32. This recovery achieves the maximum possible recovery for Settlement Class Members who make a valid claim. The notice process makes submitting a claim accessible, providing prefilled claims forms for Class Members who wish to submit a claim. Agreement ¶¶ 46, 51. The Class Members are further benefited by the terms of the proposed award of attorneys' fees that require Defendant to pay the attorneys' fees separately. Normand Supp. Decl. ¶¶ 8–11. Plaintiff seeks attorney's fees in the amount of $784,438.44.[2] *Id.* ¶ 3. This represents only 23.17% (*id.* ¶ 13) of the value of the common fund—which is below the benchmark in this Circuit. *See In re Heartland Payment Syss., Inc. Customer Data Sec. Breach Litig.*, 851 F. Supp. 2d 1040, 1081 (S.D. Tex. 2012) (explaining typical benchmark is approximately 25%). Additionally, with the additional rounds of notice ordered by the Court, the value of the claims is now $827,446.59. That amount is higher than the fees requested.

Further, while this point has already been argued to the Court, the parties would like to reiterate that claims made settlements of class actions have been repeatedly utilized and approved, including many such settlements in this specific sales tax and transfer fee context. In this regard,

---

[2] Plaintiff's Counsel's lodestar is now $590,914. 2d Normand Supp. Decl. ¶ 8.

the parties would like to call to the Court's attention to the authority routinely approving claims made settlements of class actions in the insurance context. *See, e.g., In re Prudential Ins. Co. Am. Sales Prac. Litig. Agent Actions*, 148 F.3d 283, 295 (3d Cir. 1998) (approving claims made settlement in class action alleging deceptive sales practices against insurer); *DeHoyos v. Allstate Corp.*, 240 F.R.D. 269, 278 (W.D. Tex. 2007) (approving claims made settlement, among other relief, in class action alleging civil rights violations against insurer); *Cedarview Mart, LLC v. State Auto Prop. & Cas. Co.*, No. 3:20-CV-00107-NBB-RP, 2022 WL 16748790, at *8 (N.D. Miss. Nov. 7, 2022) (approving claims made settlement in class action against insurer alleging depreciation improperly withheld from ACV payment); *Mitchell v. State Farm Fire & Cas. Co.*, No. 3:17-CV-00170-MPM-RP, 2021 WL 736895, at *3 (N.D. Miss. Feb. 25, 2021) (same); *Free v. Allstate Indem. Co.*, No. 9:20-CV-00190, 2023 WL 11909777, at *7 (E.D. Tex. Aug. 3, 2023) (approving claims made settlement in class action alleging insurer paid less than the ACV coverage limits for total fire losses). And these are just a few of a legion of cases so holding.

Indeed, claims made settlements have also been approved in many other cases alleging the same type of claims presented in this class action—the alleged wrongful failure to pay sales tax and transfer fees. *See, e.g., Davis v. GEICO Cas. Co.*, No. 2:19-CV-2477, 2023 WL 11944640, at *2 (S.D. Ohio Oct. 12, 2023) (approving claims made settlement in class action alleging insurer did not pay all sales tax and/or transfer fees); *Buffington v. Progressive Advanced Ins. Co.*, No. 7:20-CV-07408 (VB), 2024 WL 3666408, at *2 (S.D.N.Y. Aug. 6, 2024) (same); *Junior v. Infinity Ins. Co.*, No. 6:18-CV-1598-WWB-EJK, 2021 WL 4944311, at *2, 5 (M.D. Fla. Apr. 29, 2021) (same); *Erby v. Allstate Fire & Cas. Ins. Co.*, No. CV 18-4944-KSM, 2022 WL 14103669, at *1 (E.D. Pa. Oct. 24, 2022) (same); *Andrews v. State Auto Mut. Ins. Co.*, No. 2:21-CV-5867, 2023 WL 7018839, at *1 (S.D. Ohio Oct. 25, 2023) (same); *In re GEICO Gen. Ins. Co.*, No. 19-CV-

03768-HSG, 2023 WL 2530931, at *1 (N.D. Cal. Mar. 15, 2023) (same); *Spielman v. United Servs. Auto. Ass'n,* No. 219CV01359TJHMAAX, 2023 WL 2991649, at *1, 6 (C.D. Cal. Apr. 18, 2023) (same); *Romaniak v. Esurance Property & Casualty Ins. Co.,* No. 1:20-cv-02773 (N.D. Ohio April 5, 2023) (same); *Rawlins v. Esurance Property & Casualty Ins. Co.,* No. 22SL-CC03468 (Mo. Cir. Ct. Jan 23, 2023) (same). And, notably, the most recent claims made settlement of this type of action, against another member of the Allstate corporate family, was approved in February of this year by Judge deGravelles of the Middle District, in *Cummings v. Allstate Property & Casualty Ins. Co.,* No. 1:20-cv-02773 (M.D. La. Feb. 10, 2025). The parties respectfully submit that this vast body of law, while obviously not controlling, should give the Court comfort in the bona fides of final approval here.

On a related issue, the Court has expressed concern that there were numerous additional claims made after a second round of notice was ordered in this case. And, as mentioned, there have also been numerous additional claims resulting from the fourth round of notice ordered by the Court. But those additional claims do not show a deficiency in the Settlement or the notice process. They simply indicate that when the settlement was once again called to potential claimants' attention, and it was fresh in their minds, further class members decided to make claims.

Indeed, a federal court has expressly noted that when class members can continue to submit claim forms, it is expected that "more claim forms likely will be forthcoming." *In re Liberty Nat'l Ins. Cases,* No. 1:02-CV-2741-UWC, 2006 WL 8436814, at *7 (N.D. Ala. Mar. 31, 2006). Thus, in *In re WorldCom, Inc. Sec. Litig.*, the fact that 299,000 of the 840,000 class members filed claims after the original proof of claim deadline did not prevent the court from approving the final settlement. 388 F. Supp. 2d 319, 335, 337, 360 (S.D.N.Y. 2005); *see also Weber v. Gov't Emps. Ins. Co.*, 262 F.R.D. 431, 440 (D.N.J. 2009) (approving final settlement when after first notice had

a response rate of 95 claims out of 975 potential class members, the second notice yielded 147 additional claims as well as 6 late claims).

The two extended claims deadlines in this case allowed more members of the class to assert claims, which is certainly a salutary result. But those additional claims should not, as it did not in the above cases, preclude the Court from approving the settlement. Indeed, the current claim rate of 25.5% is yet a further indicator of why this settlement should be finally approved. *See* 2d Supp. Normand Decl. ¶¶ 11-12 (explaining that the claims rate of 25.5% is significantly higher than the 10%–20% typical claims rate in similar claims made settlements concerning similar claims); *Pollard v. Remington Arms Co., LLC*, 320 F.R.D. 198, 214 (W.D. Mo. 2017), *aff'd*, 896 F.3d 900 (8th Cir. 2018) (explaining "Courts around the country have approved settlements where the claims rate was less than one percent" and that "many other courts have approved class action settlements when the claims rate was in the single digits") (surveying federal cases); *see also, e.g., In re Online DVD–Rental Antitrust Litig.*, 779 F.3d 934, 941 (9th Cir. 2015) (upholding settlement in which the parties sent direct notice to all class members and received a 3.4% claim rate); *Sullivan v. DB Invs., Inc.*, 667 F.3d 273, 329 n.60 (3d Cir. 2011) (en banc) (explaining that claims rates in consumer class action settlements "rarely" exceed 7%, "even with the most extensive notice campaigns").

### D.  The Agreement Treats Class Members Equitably Relative to one Another.

The Agreement is fair to all Class Members because any Class Member who submits a claim will receive 100% recovery. There is no classification within the Class that treats Class Members differently from others. *See Tuttle v. Audiophile Music Direct, Inc.*, No. C22-1081JLR, 2023 WL 8891575, at *12 (W.D. Wash. Dec. 26, 2023) (finding equitable treatment factor favored

25

approving settlement when each class member's recovery was based on the class member providing a proof of purchase and ownership, and the form of relief the class member selected).

## CONCLUSION

For all the foregoing reasons, Plaintiff and Defendant jointly request final approval of the Settlement between the Parties, Plaintiff respectfully requests that the Court grant final approval of the proposed request for Attorneys' Fees, Costs and Service Award and the Parties jointly request the Court to enter an order of final approval that includes the content of the proposed order attached as Exhibit A hereto.

Respectfully submitted this 7th day of August, 2025.

| | |
|---|---|
| /s/ Soren E. Gisleson<br>Soren E. Gisleson, La. Bar No. 26302<br>**HERMAN KATZ GISLESON**<br>**& CAIN, LLC**<br>909 Poydras St., Ste. 1860<br>New Orleans, LA 70112<br>Tel: (504) 581-4892<br>Fax: (504) 561-6024<br>sgisleson@hhklawfirm.com<br><br>Edmund A. Normand*<br>Florida Bar No.: 865590<br>**NORMAND PLLC**<br>3165 McCrory Place, Ste. 175<br>Orlando, FL 32803<br>Tel: 407-603-6031<br>E-Mail: ed@normandpllc.com<br>E-Mail: ean@normandpllc.com<br><br>Adam A. Schwartzbaum*<br>Florida Bar No.: 093014<br>**EDELSBERG LAW, P.A.**<br>20900 NE 30th Ave., Suite 417<br>Aventura, FL 33180<br>Tel: 305-725-1245<br>E-Mail: adam@edelsberglaw.com | /s/ Steven M. Levy<br>Steven M. Levy*<br>**DENTONS US LLP**<br>233 S. Wacker Drive, Suite 5900<br>Chicago, Illinois 60606<br>Tel: (312) 876-8000<br>Fax: (312) 876-7934<br>steven.levy@dentons.com<br><br>Mithun Kamath<br>**BARRASSO USDIN KUPPERMAN**<br>**FREEMAN & SARVER, L.L.C.**<br>909 Poydras Street, Suite 2350<br>New Orleans, Louisiana 70112<br>Tel: (504) 589-9700<br>Fax: (504) 589-9701<br>mkamath@barrassousdin.com<br>***Attorneys for Imperial Fire & Casualty***<br>***Insurance Company*** |

Andrew Shamis, Esq.*
Florida Bar No.: 101754
**SHAMIS & GENTILE, P.A.**
14 NE 1st Avenue, Suite 705
Miami, FL 33132
Telephone: 305-479-2299
E-mail: ashamis@shamisgentile.com
***Attorneys for Plaintiff***

*admitted pro hac vice*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on August 7, 2025, I caused a true and correct copy of the foregoing to be served upon all persons and entities registered and authorized to receive such service through the CM/ECF system.

*/s/ Soren E. Gisleson*
Soren E. Gisleson, La. Bar No. 26302